*543
 
 OPINION OF THE COURT
 

 Bellacosa, J.
 

 The issue is whether the defendant treating physician is entitled to summary judgment dismissing plaintiffs-appellants’ cause of action for breach of the physician’s duty to provide truthful information to the patient’s insurance company. We hold that factual issues exist that preclude the grant of summary judgment to defendant physician, who was sued by his former patient. The allegations and record in this case pose issues of fact as to whether the doctor placed the patient in a position of having no reasonable alternative but to settle with the patient’s insurance carrier when he provided false deposition and affidavit testimony regarding the patient’s medical condition in a Federal lawsuit involving medical insurance coverage.
 

 Plaintiff Burton Aufrichtig is married to Janette Aufrichtig and serves as the conservator of her property. Janette Aufrichtig suffers from multiple sclerosis and is in a severe stage of the disease, bedridden and, for some time, unable to speak or otherwise communicate. Defendant Dr. Bruce K. Lowell, her primary care physician, had prescribed for her "skilled nursing care around the clock.” He held this professional assessment of her case and condition from May 1984 through February 1990. Dr. Lowell’s medical evaluation of Mrs. Aufrichtig was confirmed by a neurologist retained by plaintiffs’ insurance carrier, Hartford Insurance Company. In June 1988, the carrier’s first neurologist stated that Mrs. Aufrichtig was "totally dependent” on others, and "in view of her poor medical condition, her case should be in the hands of a licensed practicing nurse.”
 

 In satisfaction of a comprehensive health plan, the insurer provided, for a period of time, reimbursement for up to 24 hours per day of skilled nursing care for Mrs. Aufrichtig. In August 1989, however, the carrier began a reevaluation of the patient’s nursing care needs. In February 1990, Hartford formally notified plaintiffs that, based on a recommendation from another neurologist chosen by the company, it was reducing authorized skilled nursing care policy benefits for Mrs. Aufrichtig from 24 hours a day to 6 hours per day.
 

 
 *544
 
 On March 9, 1990, plaintiffs sued their insurance company in Supreme Court, New York County. The defendant Hartford had the case removed to the United States District Court, Southern District of New York. The complaint alleged that Mrs. Aufrichtig was completely and severely disabled with multiple sclerosis, and the Aufrichtigs sought to enjoin the reduction in skilled nursing benefits. Specifically, plaintiffs alleged that Mrs. Aufrichtig could not eat without assistance, and because of her weakened physical and mental condition, she required around-the-clock skilled nursing care.
 

 In the course of discovery of the removed Federal action, Hartford subpoenaed Dr. Lowell as treating physician, for a nonparty deposition. In August 1990, Dr. Lowell admittedly gave false deposition testimony concerning Mrs. Aufrichtig’s condition, medical history and need for skilled nursing care. Specifically, he swore that his patient required skilled nursing care only at meal time. Dr. Lowell averred that at all other times a home health aide would be sufficient. On October 2, 1990, shortly before trial, the physician signed an affidavit prepared and unilaterally presented to him by Hartford’s attorneys, without notice to plaintiffs. In that document, treated as the equivalent of testimony under Federal court practice, he stated that Mrs. Aufrichtig required only "a home health aide, rather than a licensed nurse,” that she never suffered from a grand mal seizure, and that she required skilled nursing care only at meal time for a total of six hours per day.
 

 On the eve of the Federal trial, however, Dr. Lowell executed an about-face. He signed a new affidavit, this one prepared by plaintiffs’ counsel, recanting his earlier deposition testimony as follows:
 

 "[M]y deposition testimony makes no sense at all, and in the context of the actual facts of Mrs. Aufrichtig’s critical condition, does not reflect my opinion, then or now, concerning her need for skilled nursing care nor what I believe would be the opinion of any medical doctor who examined Mrs. Aufrichtig and had cared for her as I have.
 

 "There is no question but that Mrs. Aufrichtig requires nursing care at all times.”
 

 Dr. Lowell also recanted the affidavit he gave to the insurance company lawyers, claiming that he signed it to avoid having to testify at the trial of that case.
 

 
 *545
 
 As the bench trial was about to commence, the Federal District Court Judge held a meeting with all counsel and, according to the affidavit in the summary judgment motion in the instant action, the Judge urged plaintiffs and their counsel to consider settling in view of the treating physician’s conflicting sworn statements. The Trial Judge allegedly informed the lawyers that the court could not see how plaintiffs could succeed in the claim against the carrier in the face of medical proof developments. TSTo record was made of the Judge’s statements. Plaintiffs allege, however, that the Judge stated, in sum, substance and effect, "that in view of the position taken by the primary care physician, Dr. Lowell, in his October 2, 1990 affidavit, the prospect of Janette Aufrichtig being able to prevail on her injunction claims was
 
 de minimis.”
 
 After negotiations under the court’s supervision, Hartford agreed to provide skilled nursing benefits for 10 hours a day, 6 days a week, with 6 additional hours per week to be used as needed and as desired. Plaintiffs acquiesced and settled the Federal nonjury lawsuit with Hartford.
 

 The Aufrichtigs then commenced the instant State action against defendant Dr. Lowell to recover damages caused by his having provided Hartford with "an admittedly perjurious affidavit.” Plaintiffs aver that the treating physician’s wrongful conduct left them with no reasonable alternative except to settle the Federal case with Hartford for far less in nursing benefits than Mrs. Aufrichtig was entitled to under her insurance plan. Defendant physician moved to dismiss the complaint pursuant to CPLR 3211 (a) (7) and 3212 (b). Plaintiffs cross-moved for partial summary judgment on the issue of liability.
 

 Supreme Court granted defendant’s motion dismissing the complaint and denied plaintiffs’ cross motion. The Appellate Division unanimously affirmed, stating that although the treating physician allegedly provided careless and contradictory testimony, "no action lies against him for breach of plaintiff patient’s confidentiality * * * plaintiffs having waived confidentiality by affirmatively placing the insured patient’s medical condition in issue in seeking to enjoin the reduction of insurance benefits” (202 AD2d 326). This Court granted leave to appeal to plaintiffs.
 

 We view the gravamen of plaintiffs’ complaint in the instant action as defendant’s transgression of his duty to his patient to refrain from providing false statements regarding Mrs.
 
 *546
 
 Aufrichtig’s medical condition. Plaintiffs argue that defendant Lowell owed Mrs. Aufrichtig a duty not to make false reports to her insurance company and that defendant breached this duty by falsely testifying and providing a false affidavit. Plaintiffs acknowledge that, as a general rule, New York does not recognize a cause of action for fraudulent or perjured testimony
 
 (see, Newin Corp. v Hartford Acc. & Indent. Co.,
 
 37 NY2d 211, 217). Plaintiffs assert in the particular, however, that the duty owed by a treating physician to the patient to provide truthful medical information arises as part of the existing physician-patient confidential relationship.
 

 Liability may arise where a duty obtains, if one speaks at all, to provide truthful information. Thus, we conclude that because the defendant treating physician stands in a relationship of confidence and trust to his patient, he owed plaintiffs in this case a duty to speak the truth about her medical condition.
 

 While no issue of breach of confidentiality of the physician-patient privilege remains in this case, some context is still relevant. In New York, the special relationship akin to a fiduciary bond, which exists between the physician and patient, is reflected in CPLR 4504. The basis of the evidentiary privilege is that patients will be forthcoming and encouraged to provide complete data to assist a medical provider in diagnosis and treatment
 
 (see, Williams v Roosevelt Hosp.,
 
 66 NY2d 391, 395-396). An additional motivation for the existence of the privilege is the avoidance of a Hobson’s choice for physicians: choosing between honoring their professional obligation with respect to their patients’ confidences or their legal duty to testify truthfully. By law and by oath, a physician warrants that any confidential medical information obtained through the relationship will not be released without the patient’s permission. The physician-patient relationship thus operates and flourishes in an atmosphere of transcendent trust and confidence and is infused with fiduciary obligations
 
 (see, Hammonds v Aetna Cas. & Sur. Co.,
 
 243 F Supp 793, 802 [and cases cited]).
 

 The physician in this case would limit his duty to the provision of competent medical treatment to his patient. Defendant, however, has ignored the central thrust of this case and confused simple and ordinary medical malpractice with the distinct yet related duty, when required, of providing truthful information about the patient. Unassailably, part of a
 
 *547
 
 physician’s duty to the patient, when authorized to supply otherwise confidential information to others — either as a result of a patient’s express consent or waiver by the condition having been placed in issue — includes truthful utterances, particularly, as here, when delivered under oath and with awareness that a false statement will be relied upon to the detriment of the patient. Notably, doctors who provide false information may open themselves to a charge of professional misconduct. Section 6509 of the Education Law provides: "Each of the following is professional misconduct * * * (9) Committing unprofessional conduct, as defined by the board of regents in its rules.” 8 NYCRR 29.1 (b) (6) specifies as unprofessional conduct "willfully making or filing a false report”.
 

 We therefore reach the question whether the defendant physician was entitled to summary judgment in the face of the particular record concerning his alleged breach of duty in this case. At defendant’s deposition, he testified that Mrs. Aufrichtig required skilled nursing care only at feeding and medication times; that suctioning Mrs. Aufrichtig, other than at meal times, could be performed by a home health aide, and that an intermittent catheter could be administered by a home health care worker. In conformity with this testimony, defendant executed an affidavit prepared by Hartford’s attorneys in which he affirmed that a skilled nurse was required only during "the administration of meals and medication and that the service of the home health aide or companion is sufficient for the balance of the day.” In direct contradiction to these statements, defendant later provided an affidavit prepared by plaintiffs’ counsel in which he affirmed that "Mrs. Aufrichtig require[d] nursing care at all times to be available to aspirate her, give her medication, catheterize her and provide all of the other nursing services which she continually requires.”
 

 The defendant treating physician here was the crucial link and indispensable source of knowledge and pertinent facts about Mrs. Aufrichtig’s case and condition for the provision of her insurance medical benefits. Others would ordinarily be expected to rely on this unique source and did so, in the most formal and official setting, according to this record. His assertion was not a casual expression of belief, but was a voluntary and willful affirmation of the crucial false facts and professional opinion. Plaintiffs had engaged his services rightfully expecting not only reasonable medical care and competence,
 
 *548
 
 but also truthful, continuing, necessary supply of medical information, when required.
 

 By defendant’s own admission, the initial sworn statements communicated to the Federal court were false. Defendant knew that his testimony was desired for a serious purpose by persons who intended to rely and act decisively on his sworn assertions. The cause of action was properly and sufficiently pleaded in this case and is not subject to summary judgment resolution on this record, particularly in light of the settlement of a nonjury lawsuit, allegedly spurred by the trier-of-fact Federal Trial Judge’s blunt assessment of plaintiffs’ poor chances for success in the case against the insurance company in light of the doctor’s mixed sworn signals.
 

 In sum, defendant Lowell owed plaintiffs a duty of care not to impart false information in his formal sworn submissions, advanced for the serious and crucial litigation purpose then at issue. The facts pleaded and the record in this case do not support the grant of summary judgment to defendant in the action for breach of the doctor’s attendant duty to his patient.
 

 We have reviewed all other issues and conclude that they are without merit.
 

 Accordingly, the order of the Appellate Division should be modified, with costs to plaintiffs, to the extent of denying defendant’s motion for summary judgment, and reinstating plaintiffs’ complaint, and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
 

 Order modified, with costs to plaintiffs, by denying defendant’s motion for summary judgment and, as so modified, affirmed.