# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 14, 2008 Session

## BILLY OVERSTREET
### v.
## TRW COMMERCIAL STEERING DIVISION ET AL.

**Extraordinary Appeal from the Chancery Court for Smith County**
**No. 7316      C.K. Smith, Chancellor**

---

**No. M2007-01817-SC-R10-WC - Filed June 17, 2008**

---

In this claim for workers' compensation, the defendant/employer filed a motion seeking permission to have an ex parte interview with the treating physician regarding the medical condition of the plaintiff/employee. The employer also sought an order requiring the employee to submit to an independent medical evaluation. The trial court denied each motion, and we granted the employer's application for extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. Upon review of the record and consideration of the applicable law, we hold that (1) the employer may not communicate ex parte with the employee's treating physician without first obtaining a waiver of the implied covenant of confidentiality from the employee; and (2) the employer's request for the worker to undergo a medical evaluation should be granted unless the trial court determines that the request is unreasonable.

**Tenn. R. App. P. 10 Appeal by Permission; Order of the Chancery Court for Smith County Affirmed in Part, Reversed in Part**

GARY R. WADE, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined. WILLIAM C. KOCH, JR., J., concurring.

Richard Lane Moore and Daniel H. Rader, IV, Cookeville, Tennessee, for the appellant, TRW Commercial Steering Division.

William Joseph Butler and E. Guy Holliman, Lafayette, Tennessee, for the appellee, Billy Overstreet.

## OPINION

### Facts and Procedural History

Billy Overstreet ("Overstreet") worked for TRW Commercial Steering Division ("TRW") for thirty-four years until his retirement on May 6, 2003. During his term of employment, Overstreet, a high school graduate with limited skills in reading and arithmetic, was a painter, a tow motor operator on the shipping dock, and an assembly line worker. His retirement income from

TRW is $1,078 per month. Because of deep vein thrombosis in his legs, he receives an additional $1,594 per month in Social Security disability benefits.

On May 6, 2005, two years after his retirement, Overstreet complained to a nurse practitioner of hearing loss and a ringing in his ears. Dr. Scott Fortune conducted an audiogram five days later and concluded that Overstreet had a 40% hearing loss. Overstreet notified TRW of his condition and claimed that his hearing loss was related to his employment. After being selected as the treating physician from a panel of three physicians provided by TRW, Dr. David Haynes examined Overstreet, determined that he had a 13.1% permanent impairment for hearing loss and a 5% impairment for tinnitus (ringing in the ears). He recommended hearing aids. After reviewing his work history, Dr. Haynes concluded that Overstreet's hearing loss was caused, in part, by his employment with TRW. Nevertheless, TRW denied the workers' compensation claim, and Overstreet filed a complaint in the Chancery Court of Smith County.

After the examination by Dr. Haynes, Overstreet provided him with written notification "NOT [to] discuss anything about me with the attorney or attorneys who represent or work for my employer and/or its workers' compensation insurance carrier (company) in person, by letter, by phone and/or otherwise." Later, TRW was unsuccessful in its attempts to interview either Dr. Haynes or Dr. Fortune outside the formal procedures for discovery. Lucille Woodruff, Dr. Haynes's office manager, informed TRW that the only way that Dr. Haynes could discuss Overstreet's condition would be in a deposition. Dr. Fortune's front office supervisor, Tambra Ward, notified TRW that Dr. Fortune would be unable to discuss his medical diagnosis without Overstreet present.

TRW then filed a motion asking the trial court to order an independent medical evaluation by its physician, Dr. Bronn Rayne. In the alternative, TRW sought permission to question Dr. Haynes out of the presence of Overstreet and his counsel. The trial court denied both requests and refused an interlocutory appeal.

TRW made application for an extraordinary appeal under Rule 10 of the Tennessee Rules of Appellate Procedure:

> An extraordinary appeal may be sought on application and in the discretion of the appellate court alone of interlocutory orders of a lower court from which an appeal lies to the Supreme Court, Court of Appeals or Court of Criminal Appeals: (1) if the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review, or (2) if necessary for complete determination of the action on appeal as otherwise provided in these rules. The appellate court may issue whatever order is necessary to implement review under this rule.

Tenn. R. App. P. 10(a). TRW asserts that Overstreet's injury was not caused by his workplace environment because he did not begin to suffer from hearing impairment until two years after his retirement. TRW argues that independent medical testimony will be necessary to advance any of its

theories of alternative causation, such as Overstreet's advancing age, his operation of a riding lawnmower without ear protection, or his occasional visits to noisy casinos in Tunica and Las Vegas. TRW submits that because the question of causation will hinge upon the expert medical proof, an independent medical evaluation is essential in order to prepare adequately for litigation.

In an effort to establish guidance on these important questions, we granted the extraordinary appeal. The specific issues presented are (1) whether an employer is permitted to conduct an ex parte interview with an employee's treating physician; and (2) whether the employer is entitled to a medical evaluation conducted by a physician of the employer's choice.

## Standard of Review

Because the issues presented for our review involve questions of law, our standard of review is de novo with no presumption of correctness. Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 826 (Tenn. 2003); Ganzevoort v. Russell, 949 S.W.2d 293, 296 (Tenn. 1997). The standard of review for issues of fact is de novo upon the record accompanied by a presumption of correctness of the trial court's findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (2005).

Our resolution of the dispute also depends upon statutory interpretation. Well defined precepts apply. "'[T]he most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002) (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. In re C.K.G., 173 S.W.3d 714, 722 (Tenn. 2005). "When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004). In that instance, our obligation is to enforce the written language without reference to the broader statutory intent, the history of the legislation, or other sources. Abels ex rel. Hunt v. Genie Indus. Inc., 202 S.W.3d 99, 102 (Tenn. 2006).

## I. Ex Parte Communications with Treating Physician

There is no testimonial privilege for doctor-patient communications in Tennessee. Quarles v. Sutherland, 389 S.W.2d 249, 251-52 (Tenn. 1965). In Givens v. Mullikin ex rel. McElwaney, 75 S.W.3d 383, 407-08 (Tenn. 2002), however, this Court acknowledged the existence of an implied covenant of confidentiality between a physician and a patient arising out of the original contract of treatment for payment, one that specifically precluded informal discussions with a law firm employed to defend the patient's claim: "[A] physician breaches his or her implied covenant of confidentiality by divulging medical information, without the patient's consent, through informal conversations with others." Id. at 409. We observed that "patients and physicians now clearly expect that the physician will keep the patient's information confidential, and this expectation arises at the time that the patient seeks treatment." Id. at 407. The implied covenant forbids doctors from

3

"releas[ing] without the patient's permission" "any confidential information gained through the [physician-patient] relationship." Id. "While the understanding of the parties giving rise to the implied covenant of confidentiality permits a physician to disclose information pursuant to subpoena or court order, this understanding does not include permission to divulge this information informally without the patient's consent." Id. at 408-09.

In Alsip v. Johnson City Medical Center, 197 S.W.3d 722 (Tenn. 2006), this Court explained that the implied covenant of confidentiality prohibits ex parte communications between the defense counsel and the plaintiff's non-party physicians. In the analysis, this Court "balance[d] society's legitimate desire for medical confidentiality against . . . [the] need for full disclosure of plaintiffs' relevant health information," concluding that the prohibition of any communications with physicians outside of the presence of the patients would not serve as a disadvantage in view of "the formal [discovery] procedures prescribed in Tennessee Rule of Civil Procedure 26.01 . . . [such as] deposition upon oral examination or written questions, written interrogatories, and requests for admissions."[1] Id. at 727.

Ostensibly, our holding in Alsip would seem to prevent TRW from communicating with Dr. Haynes outside normal discovery procedures. TRW insists, however, that this case differs from Alsip in two fundamental ways: First, because the contract for medical services was made between TRW and Dr. Haynes, Overstreet was not a party to the contract, and had no entitlement to an implied covenant of confidentiality. See Givens, 75 S.W.3d at 407 (stating that an implied covenant of confidentiality arises "from the original contract of treatment for payment"). Second, Tennessee's Workers' Compensation Act specifically authorizes employers to access the medical information of employees making claims under the Act, which would "void" any covenant of confidentiality. See Tenn. Code Ann. § 50-6-204(a)(1), (2)(B) (2005 & Supp. 2007).

In Givens, we characterized the covenant of confidentiality as implied in fact arising from the mutual intent of the patient and physician. 75 S.W.3d at 407 (quoting Angus v. City of Jackson, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997)). A contract implied in fact is one that arises from "a legal inference from the facts and circumstances of the case." Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 154 (Tenn. 1966) (quoting Weatherly v. Am. Agric. Chem. Co., 65 S.W.2d 592, 598 (Tenn. Ct. App. 1933)). The doctrine is designed to effectuate the actual intent of the parties at the time a contract was entered. See Givens, 75 S.W.3d at 407; Angus, 968 S.W.2d at 808. These contracts must be based on evidence sufficient to show offer, acceptance, and intent to affect legal relations. 17 C.J.S. Contracts § 6b (2007).

As indicated, Overstreet chose Dr. Haynes from a list of three physicians provided by TRW. By all appearances, TRW had contracted with Dr. Haynes and other physicians to examine and treat

---

[1] The Tennessee courts are not unique in their general prohibition of ex parte communications between defendants' attorneys and plaintiffs' physicians. "The emerging consensus adheres to the position that defense counsel is limited to the formal methods of discovery enumerated by the jurisdiction's rules of civil procedure, absent the patient's express consent to counsel's ex parte contact with her treating physician." Crist v. Moffatt, 389 S.E.2d 41, 45 (N.C. 1990) (citing Petrillo v. Syntex Lab., Inc., 499 N.E.2d 952 (1986)).

4

its injured employees to comply with the terms of the Tennessee Workers' Compensation Act. See Tenn. Code Ann. § 50-6-204(a)(1) (stating that "[t]he employer or the employer's agent shall furnish free of charge to the employee such medical and surgical treatment"). The limited record before us, however, does not demonstrate any intent by Overstreet to create an implied covenant of confidentiality between Overstreet and Dr. Haynes. The mutual intent necessary to form a covenant of confidentiality implied in fact is not evident from the record.

A covenant of confidentiality between Overstreet and Dr. Haynes also may be implied in law. There are two distinct types of implied contracts: contracts implied in fact and contracts implied in law. Paschall's, 407 S.W.2d at 153. Contracts implied in law do not depend on the intent of the parties, but are instead derived from obligations established under law. Id. at 154. One author describes this as a legal fiction that can only arise in the absence of an actual contract or contract implied in fact. 42 C.J.S. Implied and Constructive Contracts § 8 (2007). These quasi-contractual obligations are grounded in "reason and justice" and do not depend on privity of contract or assent by the party bound. Angus, 968 S.W.2d at 808 (citing Weatherly v. American Agr. Chem. Co., 65 S.W.2d 592 (1933)). While, contracts implied in law are most often applied in situations involving unjust enrichment, see, e.g., Freeman Industries, LLC v. Eastman Chemical Co., 172 S.W.3d 512, 524-25 (Tenn. 2005); Whitehaven Community Baptist Church v. Holloway, 973 S.W.2d 592, 596-97 (Tenn. 1998), they also may be founded in "a statutory, official, or customary duty." County of Giles v. First U. S. Corp., 445 S.W.2d 157, 160 (Tenn. 1969) (quoting William A. Keener, The Law of Quasi-Contracts, 16 (1883)). Traditionally, these contracts have been used as grounds for money damage awards, however, we see no compelling reason to preclude the use of quasi-contractual obligations as a means of conveying other benefits, if justice so requires. With these principles in mind, we consider whether a contract implied in law should be applied to the physician-patient relationship in a workers' compensation claim.

The Tennessee Workers' Compensation Act addresses in detail the value of the information a doctor may disclose to the employer. The relevant portion of Tennessee Code Annotated section 50-6-204(a)(1) and (2) provides as follows:

(a)(1) [A] physician shall, upon request, furnish to the employer or to the employer's insurer . . . a complete medical report . . . as to the claimed injury, its effect upon the employee, the medical treatment prescribed, an estimate of the duration of required hospitalization, if any, and an itemized statement of charges for medical services to date. . . .
. . . .
(2)(B) If requested in writing by the employer or insurer . . . the physician and hospital shall also furnish subsequent prognosis reports, medical records and statements of charges at intervals of not less than sixty (60) days. No such relevant information developed in connection with treatment or examination for which compensation is sought by the employee shall be considered a privileged communication. The employee's consent shall not be required for the furnishing of such reports or records, and no physician or hospital furnishing such report or record

5

shall incur any liability as a result thereof.

Tenn. Code Ann. § 50-6-204(a)(1), (2)(B). Although much disclosure is required under the Act, none of the terms permit ex parte communications by the employer with the employee's treating physicians. From this conspicuous absence, we must infer that the Generally Assembly did not intend such communications. A familiar canon of statutory interpretation expresses: *expressio unius est exclusio alterius* ("to express one thing is to exclude others"). See TRW, Inc. v. Andrews, 534 U.S. 19, 28-29 (2001); State v. Strode, 232 S.W.3d 1, 10 (Tenn. 2007).

Had the General Assembly intended to eliminate all assurances of physician-patient confidentiality in the workers' compensation context, as TRW insists, they would have been explicit.[2] Moreover, the General Assembly has enacted several statutes that convey a public policy favoring the confidentiality of medical information. Tenn. Code Ann. §§ 63-2-101(b)(1) (2004 & 2007 Supp.); 68-11-1502, 1503 (2006). In the Patients' Privacy Protection Act, our legislature recognized that "[e]very patient entering and receiving care at a health care facility licensed by the board for licensing health care facilities has the expectation of and right to privacy for care received at such facility." Tenn. Code Ann. § 68-11-1502 (2006). Further, the General Assembly also has enacted statutes to limit the disclosure of medical records. Tenn. Code Ann. § 63-2-101(b)(1) (2004 & Supp. 2007). In our view, these statutes are representative of a policy promoting the maintenance of confidentiality in medical treatment. Because the General Assembly has enacted a right to privacy in health care and provided a comprehensive statutory scheme for the disclosure of information under the Workers' Compensation Act, we hold that an implied a covenant of confidentiality in law exists under these circumstances.

While our ruling in Givens recognized a covenant implied in fact, we find nothing in our previous cases to suggest that a covenant of confidentiality cannot be implied in law. Indeed, we have observed that "the covenant of confidentiality arises not only from the implied understanding of the agreement between patient and doctor, but also from a policy concern that such private and potentially embarrassing information should be protected from public view." Alsip, 197 S.W.3d at 726. The policy considerations that we addressed in Givens and Alsip are no less relevant in the workers' compensation context. We maintain that "[a]ny time a doctor undertakes the treatment of a patient, and the consensual relationship of physician and patient is established . . . the doctor warrants that any confidential information gained through the relationship will not be released without the patient's permission." Givens, 75 S.W.3d at 407 (quoting Hammonds v. Aetna Cas. & Sur. Co., 243 F.Supp. 793, 801 (N.D. Ohio 1965)). This confidentiality in care-giving exists because

---

[2] TRW's brief cites one sentence from the middle of the paragraph in Tennessee Code Annotated section 50-6-204(2)(B): "No such relevant information developed in connection with treatment or examination for which compensation is sought by the employee shall be considered a privileged communication." This sentence, however, is out of context without the previous sentence: "If requested in writing by the employer or insurer . . . the physician and hospital shall also furnish subsequent prognosis reports, medical records and statements of charges at intervals of not less than sixty (60) days." Tenn. Code Ann. § 50-6-204(a)(1), (2)(B). In light of the previous sentence, the words "such relevant information" refers "prognosis reports, medical records and statements of charges," and not all relevant information.

"[t]o the physician we bare our bodies . . . in confidence that what is seen and heard will remain unknown to others." Alsip, 197 S.W.3d at 726 (quoting Cua v. Morrison, 626 N.E.2d 581, 586 (Ind. Ct. App.1993)).

Unique concerns may arise if ex parte communications are permitted in this context. When rendering services for injuries arising out of employment, the employers actually pay the physicians. See Tenn. Code Ann. § 50-6-204(a)(1). In a sense, the physician owes a service to the employer in exchange for his compensation. To some this would call into question whether the physician is free to exercise independent medical judgment. That concern could be exacerbated by allowing the employer to interview the physician outside the employee's presence. In addition, informal conversations about the employee's medical treatment present the risk of inadvertent disclosure of sensitive or irrelevant medical information. In Roosevelt Hotel Limited Partnership v. Sweeney, 394 N.W.2d 353, 357 (Iowa 1986), the Iowa Supreme Court noted, "Placing the burden of determining relevancy on an attorney, who does not know the nature of the confidential disclosure about to be elicited, is risky. Asking the physician, untrained in the law, to assume this burden is a greater gamble and is unfair to the physician." Employees should not be discouraged from seeking workers compensation for fear of exposing their full medical history, regardless of relevancy, to their employer.

Aside from protecting the employees' medical history, rules against ex parte communications insulate both physicians and employers' attorneys from liability or allegations of wrong-doing. See Givens, 75 S.W.3d at 408-11 (recognizing a cause of action for both a breach of the implied covenant of confidentiality and inducement to breach a confidential relationship); see also Loudon v. Mhyre, 756 P.2d 138, 141 (Wash. 1988) (recognizing that "a physician has an interest in avoiding inadvertent wrongful disclosures during ex parte interviews."). Further, to bar informal discussions of the employee's medical condition should not place too great a burden on the employer, considering that the same information is available through discovery. Our ruling is consistent with the North Carolina Supreme Court: "The prohibition against unauthorized ex parte contacts regulates only how defense counsel may obtain information from a plaintiff's treating physician, i.e., it affects defense counsel's methods, not the substance of what is discoverable." Crist v. Moffatt, 389 S.E.2d 41, 45 (quoting Manion v. N.P.W. Medical Center of N.E. Pa. Inc., 676 F.Supp. 585, 593 (M.D. Pa. 1987)).

For all of these reasons, we hold that an implied covenant of confidentiality arises between an employee and any physician supplied by the employer pursuant to the Tennessee Workers' Compensation Act.[3] The covenant is implied in law and does not depend on the mutual intent of

---

[3] The concurrence suggests we could reach the same result through the legal mechanisms of a "physician's duty of non-disclosure" and a "privilege against non-disclosure." While we respectfully acknowledge this point of view, we decline to take this route. First, both parties argued this case from the approach of an implied covenant of confidentiality. Second, we would be hard-pressed to find such a privilege in the Tennessee Code. The part of the Tennessee Code dealing with privileged communications in regard to evidence and witnesses does not include a testimonial physician-patient privilege. Tenn Code Ann. §§ 24-1-201 to -211 (2007). The term "privilege" is a specific and well-defined term of art in the legal community and has been recognized in many other jurisdictions. See, e.g., Aufrichtig v. Lowell, 650

7

contracting parties. To hold that covenants of confidentiality must always arise from the mutual intent of the parties at the time of contract for payment, in our view, would elevate form over substance.

TRW next argues that even if an implied covenant of confidentiality exists, the terms of the Workers' Compensation Act requiring disclosure of certain portions of the employee's medical information trumps confidentiality. We disagree. We have previously confirmed that "'the confidential nature of the physician-patient relationship remains even though medical information is . . . subject to discovery'" because the patient maintains his contractual right to the confidentiality of any information relating to his health that does not pertain to the claim. Alsip, 197 S.W.3d at 727-28 (quoting Crist v. Moffatt, 389 S.E.2d 41, 44 (N.C. 1990)); accord Petrillo v. Syntax Lab., Inc., 499 N.E.2d. 952, 959 (Ill. App. Ct. 1986). By use of the same rationale, an employee making a workers' compensation claim is still entitled to the implied covenant of confidentiality, even though the employer may request and receive prognosis reports, medical records, and statements of charges from the treating physician without the patient's consent. See Tenn. Code Ann. § 50-6-204(a)(1), (2)(B) (2005 & Supp. 2007). By accepting medical benefits provided by the employer, an employee necessarily consents to disclose certain medical information that would otherwise be confidential, but Tennessee Code Annotated section 50-6-204 sets the limits of the disclosure. C.f. Aslip, 197 S.W.3d at 728 ("[T]he scope of the plaintiffs' consent must be determined by the express terms of the Tennessee Rules of Civil Procedure, which do not prescribe ex parte communications."). Access to medical information beyond the statutory mandate requires consent. Simply because that statute opens some medical information to employers does not void the covenant of confidentiality with regard to other information.

---

N.E.2d 401, 404 (N.Y. 1995). Had our legislature intended to enact a privilege, the General Assembly, being versed in the legal lexicon, likely would have used the precise term "privilege." Indeed, the Tennessee Code Annotated specifically includes this term of art in other areas, such as the psychologist-patient privilege. Tenn. Code Ann. § 63-11-213 (2007). Instead of "privilege," the statutes cited by the concurrence note that patients have an "expectation of and right to privacy." Third, the portion of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") dealing with privacy regulation does not convey a remedy upon private parties, but rather, violations are resolved by the Secretary of Health and Human Services. 45 CFR §§ 160.306, 160.312 (2008). A violation of HIPAA results in a civil fine. 45 CFR § 160.402. Nothing in HIPAA suggests there is a federal "fiduciary duty of non-disclosure" or federal "privilege against non-disclosure." See Barry R. Furrow, et al., Health Law: Cases, Materials and Problems 349 (5th ed. 2004) ("The HIPAA Privacy Regulation does not give people the right to sue. A person must file a written complaint with the Secretary of Health and Human Services via the Office for Civil Rights. It is then within the Secretary's discretion to investigate the complaint."). Fourth, there may arise circumstances where a physician's duty of non-disclosure would clash with a physician's duty to warn identifiable third persons against foreseeable risks emanating from a patient's illness. See Bradshaw v. Daniel, 854 S.W.2d 865, 872 (Tenn. 1993). In contrast, we previously have noted that the implied covenant of confidentiality would not create a barrier in these situations. Givens, 75 S.W.3d at 409. Fifth, we find little practical and tangible difference between a duty imposed by an implied contractual covenant (approach of the majority) and a duty imposed by a fiduciary relationship arising out of contract (approach of the concurrence). Thus, under the doctrine of stare decisis, we do not find a sufficiently compelling reason to deviate from the approach we previously have used. "The power of this Court to overrule former decisions 'is very sparingly exercised and only when the reason is compelling.'" In re Estate of McFarland, 167 S.W.3d 299, 306 (Tenn. 2005) (quoting Edingbourgh v. Sears, Roebuck & Co., 337 S.W.2d 13, 14 (Tenn. 1960)).

We hold, therefore, that other than through the discovery procedures, TRW is limited to "a complete medical report . . . as to the claimed injury, its effect upon the employee, the medical treatment prescribed, an estimate of the duration of required hospitalization, if any, and an itemized statement of charges for medical services to date," as well as "subsequent prognosis reports, medical records and statements of charges . . . ." Tenn. Code Ann. § 50-6-204(a)(1), (2)(B); see also Tenn. R. Civ. P. 23.01; Alsip, 197 S.W.3d at 727. The trial court correctly denied ex parte communications between TRW and Dr. Haynes.

## II. Independent Medical Evaluation

TRW next argues that the trial court erred by declining to order Overstreet to submit to an independent medical examination. It points to Tennessee Code Annotated section 50-6-204(d), which provides in relevant part:

> (1) The injured employee must submit to examination by the employer's physician at all reasonable times if requested to do so by the employer . . . .
> (8) If the injured employee refuses to comply with any reasonable request for examination or to accept the medical or specialized medical services which the employer is required to furnish under the provisions of this law, such injured employee's right to compensation shall be suspended and no compensation shall be due and payable while such injured employee continues such refusal.

(emphasis added). TRW argues that this statutory right to have the worker examined by the employer's physician in subsection (d)(1) is separate and distinct from the employer's obligation to furnish medical treatment under subsection (a)(1). TRW also cites Tennessee Rule of Civil Procedure 35.01:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in his or her custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

In our view, a plain reading of Tennessee Code Annotated section 50-6-204 gives the employer a right to compel the employee to undergo an independent medical evaluation, so long as the request is "reasonable." We previously interpreted this same language in Trent v. American Service Co., 206 S.W.2d 301 (Tenn. 1947):

> The purpose of the provision . . . whereby the injured employee must comply "with any reasonable request for an examination" "at all reasonable times" is obviously for the purpose, among others, of furnishing to the employer a fair means of ascertaining

9

if and when the employee has entirely recovered from the injury for which the employer is paying compensation or of ascertaining whether the ailments from which the employee suffers at some period subsequent to the injury is due to that injury or to some other cause not connected with his or her employment.

Id. at 303 (quoting Tenn. Code Ann. § 6875 (1934)). In order to further this purpose, trial courts have been afforded the discretionary authority to determine whether the employer's request for examination is reasonable. There are, however, guiding principles:

[W]hen it reasonably appears that the affliction of the employee may be due to some cause not arising out of and in the course of employment, then a request for such necessary examination as will determine whether the illness is due to such cause is not unreasonable, if it satisfactorily appears without contradiction that the conducting of such an examination is not attended with appreciable pain or suffering or danger to life or health.

Trent, 206 S.W.2d at 304-05.

We interpreted the right of an employer to examine the employee in Stubblefield v. Hot Mix Paving Co., 383 S.W.2d 44, 47 (Tenn. 1964). In Stubblefield, the employee argued that the trial court erred by ordering him to travel from Coffee County to Davidson County (separated in distance by Rutherford County) upon a motion by the employer to conduct an independent medical examination. Id. at 46-47. We ruled as follows:

The employer has a right to have the employee examined by a doctor or a physician of his choosing . . . for the very obvious reason of having his own physician determine whether or not he thinks the employee is injured as he claims. This then provides the evidence pro and con on behalf of the employee and employer for the trier of facts to weigh and reach his determination.

Id. at 47 (citing Atlas Powder Co. v. Grant, 293 S.W.2d 180 (Tenn. 1956)).

While Tennessee's Workers' Compensation Act has changed significantly since Stubblefield and Trent, the language in Tennessee Code Annotated section 50-6-204, giving the employer the right to have the employee examined at all reasonable times, is essentially the same. In our assessment, the current version of Tennessee's Workers' Compensation Act provides the employer with the right to have the employee examined by a doctor of its choosing. It is only when the request is unreasonable that the employer cannot exercise this right. As stated, the trial judge is vested with discretion in determining whether the circumstances warrant the examination.[4] Tibbals Flooring Co.

---

[4] In Tennessee Code Annotated section 50-6-204, subsection (1) requires that the request be made at a "reasonable time[]" and subsection (8) states that it must be a "reasonable request." This indicates that the timing of the request must be reasonable and the requested examination must be reasonable, as a whole, in light of the surrounding

v. Marcum, 404 S.W.2d 498, 500 (Tenn. 1966).

In this instance, the trial court simply found "[TRW] should not be entitled to an independent medical evaluation with Dr. Bronn Rayne and denies the same." The trial court did not address the reasonableness of the request. Nothing in the record suggests an independent medical evaluation would cause "appreciable pain or suffering or danger to life or health" of Overstreet as was the case in Trent. Trent, 206 S.W.2d at 304. Further, Overstreet has offered no real suggestions as to why TRW should be denied their statutory right.

By contesting liability, an employer does not forfeit the entitlement to compel the employee to submit to an examination conducted by a physician of the employer's choosing. Id. When causation is in dispute, standards of fairness lend themselves to the notion that the employer should have the benefit of an expert who has had the opportunity to examine the employee's alleged injury. See Thomas v. Aetna Life & Cas. Co., 812 S.W.2d 278, 283 (Tenn. 1991) ("Medical causation and permanency of an injury must be established in most cases by expert medical testimony."). This is especially true when, under the terms of our Act, any reasonable doubt as to the cause of an injury will be construed in favor of the employee. See, e.g., White v.Werthan Indus., 824 S.W.2d 158, 159 (Tenn. 1992); Williams v. Preferred Dev. Corp., 452 S.W.2d 344, 345 (Tenn. 1970). For these reasons, we hold that the trial court erred by denying TRW's request to conduct a medical evaluation.

We next consider whether TRW made a proper request under Tennessee Rule of Civil Procedure 35.01. By its own terms, Rule 35.01 requires the moving party to establish two things: (1) "the mental or physical condition . . . of a party . . . is in controversy" and (2) "good cause" for the examination exists. Tenn. R. Civ. P. 35.01. The moving party must also provide notice to the party being examined and "specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." Id. Once the moving party establishes a mental or physical condition "in controversy" and "good cause," the rule gives the trial court discretion to order a medical examination.[5]

First, because the cause of Overstreet's hearing loss is the primary dispute in this case, the physical condition of Overstreet is "in controversy." With regard to the second question, when a trial court finds that an employer has made a reasonable request for examination under Tennessee Code Annotated section 50-6-204(d), this also qualifies as "good cause" under Rule 35.01. Once the two

_____

circumstances.

[5] Because the Tennessee Rule was modeled on Federal Rule of Civil Procedure 35, the federal courts' interpretation of this rule sheds some light on the Tennessee rule. Federal courts have recognized that even when the requirements of Rule 35 are met, the trial court still has discretion in deciding whether to order a medical examination. See Hardy v. Riser, 309 F. Supp. 1234, 1241 (N.D. Miss. 1970) ("Even when the 'good cause' and 'in controversy' requirements are met, it is still in the sound discretion of the trial court whether to order the examination."); see also O'Sullivan v. Rivera, 229 F.R.D. 184, 186 (D. N.M. 2004); Shirsat v. Mutual Pharm. Co., 169 F.R.D. 68, 70 (E.D. Pa. 1996); Stuart v. Burford, 42 F.R.D. 591, 592 (N.D. Okla. 1967).

prerequisites of Rule 35.01 have been established, the trial court has the discretion to order a medical evaluation. Tenn. R. Civ. P. 35.01 ("[T]he court in which the action is pending may order the party to submit to a physical or mental examination.") (emphasis added). Unlike Rule 35.01 motions made in cases outside the workers' compensation context, however, Tennessee Code Annotated section 50-6-204(d) provides the employer a qualified right to have the employee submit to a reasonable examination. Stubblefield, 383 S.W.2d at 47. Thus, in a workers' compensation case, a trial court does not have discretion to deny a Rule 35.01 motion after finding that the employer's request is reasonable. See Tenn. Code Ann. § 50-6-204(d) (stating that an employee "must submit" to the employer's request for examination "at all reasonable times") (emphasis added).

In support of his argument that the trial court properly denied TRW's motion for an independent evaluation, Overstreet most heavily relies on Long v. Tri-Con Indus., Inc., 996 S.W.2d 173 (Tenn. 1999),[6] where the employer filed a motion to require the employee, who had suffered herniated discs for which he had surgery, to undergo an additional examination by a neurosurgeon. Id. at 178. The trial court granted the motion, but held that the post-operative examination should be conducted by the internist who had "already [been] selected by Long from the list initially provided to her by Tri-Con" instead of the employer's physician of choice. Id. at 179. When the employee appealed, arguing that the internist did not have expertise in neurology or orthopedics, we affirmed, concluding that the employer failed to demonstrate an abuse of discretion.[7] Id. Long is distinguishable on the facts. In that case, we listed other reasons for our refusal to grant relief. Id. Further, Long did not involve an interlocutory appeal. In any event, Long should not be interpreted to stand for the proposition that a reasonable request by an employer for a medical evaluation of the employee is satisfied by an evaluation conducted by the employee's treating physician. Fundamental fairness dictates that employers, when grounds exist, have the opportunity to independently investigate the merits of a claim.

In summary, we hold that an employer has a statutory right to compel an injured employee to undergo a medical evaluation by a physician of the employer's choosing. The employee may challenge the request as unreasonable in light of the circumstances. If the trial court determines the request is reasonable, the employee must submit to a medical evaluation conducted by the physician of the employer's choice. Any failure on the part of the employee to comply with such an order may result in a dismissal of the workers' compensation claim. See Tenn. Code Ann. § 50-6-204(d)(8) (2005 & Supp. 2007) (stating that "[i]f the injured employee refuses to comply with any reasonable request for examination or to accept the medical or specialized medical services which the employer is required to furnish under the provisions of this law, such injured employee's right to compensation

---

[6] Overstreet also cites Martin v. Lear Corp., 90 S.W.3d 626, 632 (Tenn. 2002). Because Martin deals with subsection (f) and not subsection (d) of Tennessee Code Annotated section 50-6-204, our holding in Martin does not control this case. Overstreet points to dicta in Martin, where we stated that "the legislature did not want employers, with greater resources, to send injured employees to many physicians for physical examinations until the employer receives a favorable result." Id. at 632. While we generally agree, that factor should be considered by the trial judge when assessing whether an employer's request for examination is reasonable.

[7] Our decision in Long did not address the implied covenant of confidentiality between a patient and physician.

12

shall be suspended"). If the employer's request is unreasonable, the trial court should deny the request, but must specifically state its reasons in the record. The standard of review on appeal of the trial court's finding is abuse of direction. <u>Tibbals</u>, 404 S.W.2d at 500.

## Conclusion

The order of the trial court is affirmed in part and reversed in part. The denial of TRW's request for ex parte communications with Dr. Haynes is affirmed. The denial of TRW's request to order a medical evaluation is reversed, and the cause is remanded to the trial court for a determination of whether their request for an independent evaluation is reasonable. Costs of the appeal are taxed to TRW Commercial Steering Division, for which execution may issue, if necessary.

_____
GARY R. WADE, JUSTICE