IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 21, 2013 Session

# WILLIAMSON COUNTY ELECTION COMMISSION, ET AL. V. PAUL WEBB, MAYOR OF BRENTWOOD, ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 40537    Timothy L. Easter, Chancellor**

**No. M2012-01418-COA-R3-CV - Filed March 22, 2013**

County election commission was denied use of city library for a polling place and initiated an action to have its rights under several election statutes declared. The trial court held that the statutes vested the election commission with the authority to designate polling places and that such authority must be exercised reasonably; the trial court also held that the city did not abuse its discretion in determining that the library was not a practicable location for use as a polling place on the dates requested and in failing to make the building available. We reverse, holding that the election commission has the sole responsibility to designate polling places and that the city, through the library board, was required to make the library available for use as a polling place.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and FRANK G. CLEMENT, JR., J., joined.

Jeffrey D. Moseley and J. Andrew Hughes, Franklin, Tennessee, for the Appellant, Williamson County Election Commission.

Joseph A. Woodruff and Keith W. Randall, Nashville, Tennessee, for the Appellees, Paul Webb, Mayor of Brentwood; Michael Walker, Brentwood City Manager; Board of Commissioners of the City of Brentwood, Tennessee; Brentwood Library Board; and City of Brentwood, Tennessee.

Paul C. Ney, Jr., Nashville, Tennessee, for the Amicus Curiae, Davidson County Election Commission.

George E. Barrett and Seth M. Hyatt, Nashville, Tennessee, for the Amicus Curiae, Tennessee Municipal League.

**OPINION**

This case involves a dispute between the William County Election Commission ("the Commission") and the City of Brentwood ("the City") and City authorities concerning the use of the Brentwood Public Library for the 2012 early voting period. The facts salient to this appeal are stipulated and are as follows:

6. On March, 5 2010, [Williamson County Administrator of Elections Ann Beard] sent to Judy Payton, administrative assistant at the Brentwood Library, an email requesting room reservations at the library for early voting dates and election day voting in 2012, 2013, and 2014. . . . The email specifically requested the following dates for early voting in 2012:

January 18 thru [sic] February 2 and February 7.
July 13 thru [sic] July 28 and August 2.
October 17 thru [sic] November 1 and November 6.

7. On March 24, 2010, Ms. Payton responded in an email confirming the reservation scheduled for the Williamson County Election Commission in May 2010, November 2010, and April 13 through May 4, 2011. Ms. Payton informed Ms. Beard that the reservation software used by the Library to schedule reservations only allows library staff to make reservations "a limited number of months in advance of the current date." Ms. Payton alternately requested "that [the Election Commission] make yearly reservations one year in advance" and requested Ms. Beard schedule the dates for the 2012 election and early voting dates in "December 2010/January 2011."

8. On November 17, 2010, Ms. Beard sent Susan Earl, Library Director for the Brentwood Library, a request to reserve Conference Room B for early voting dates and elections days during the 2012 election cycle. In her letter, Ms. Beard stated the dates for the 2012 election and early voting as:

January 18, 2012 through February 2, 2012, for early voting,
Tuesday February 7, 2012 for election day; July 13, 2012
through July 28, 2012, for early voting; Thursday, August 2,
2012, election day; October 17, 2012 through November 1,

2012, for early voting, Tuesday, November, 6, 2012, election day.

9. On November 24, 2010, Ms. Earl sent Ms. Beard a letter confirming the results of the conversation between Ms. Beard and Ms. Earl resulting in the scheduling of Conference Room A for election day and pre- and post-election storage of voting machines for the dates February 6-8, 2012, August 1-3, 2012, and November 5-7, 2012.

10. On November 8, 2011, Ms. Beard sent "official notice" that the Election Commission would be conducting early voting for the Presidential Preference Primary at the Library between February 22, 2012 and February 28, 2012. The requested early voting dates in this letter are different from all previous correspondence between Ms. Beard and any library staff and no arrangements had been made between the Election Commission and the City of Brentwood for the use of the Library as a site for early voting during the February 22-28 timeframe.

11. The dates in Ms. Beard's letter sent on November 8, 2011 differed from previous correspondence because the State of Tennessee, by the enactment of Acts 2011, Public Chapter 182, amended Tenn. Code Ann. § 2-13-205 to move the Presidential Preference Primary from the first Tuesday in February to the first Tuesday in March, effective July 2011.

12. On November 18, 2011, Michael Walker[1] responded to Ms. Beard's letter informing her the Library was not available based on "lack of available space due to previous commitments to community groups in Brentwood and the adverse impact that early voting will have with ongoing programs and use by [Library] patrons and the parking requirements." Mr. Walker also suggested alternative locations to hold early voting, including a County-owned facility in close proximity to the Library.

13. On December 8, 2011, Election Commission Chairman Robert D. ("Bob") Brown emailed Brentwood Commissioner Jill Burgin, Brentwood Vice Mayor Rob Freeman, Michael Walker, and other individuals. In the e-mail Mr. Brown "offered to conduct the Presidential Primary Election in the large foyer of the Library so that the Election would not have to displace other groups."

---

[1] Michael Walker is the Brentwood City Manager.

Mr. Brown also "compromised by offering to have only one week of Early Voting in Brentwood instead of two for the upcoming election."

16. The City of Brentwood has allowed for the use of the Library as a polling place for election day in March, August, and November 2012.

17. The Election Commission and the City of Brentwood have been unable to reach an agreement that would allow the use of the Library for early voting in the March, August, and November 2012 elections.

18. For the early voting period for the March 2012 election, early voting in Williamson County took place for two weeks at the Election Commission office at the Williamson County Administrative Complex from February 15 to 28. Early voting took place for one week, from February 22 to 28, at Fairview Recreation Center, Longview Recreation Center, Berry's Chapel Church of Christ, and Nolensville Town Hall.

25. Brentwood Library is publicly operated and controlled by Brentwood, Tennessee, and supported by taxes collected by Williamson County and the City of Brentwood, pursuant to Chapter 38 of the Brentwood Municipal Code and Tenn. Code Ann. § 10-3-101 through 102.

26. The City of Brentwood, acting through its Board of Commissioners ("City Commission") and City Manager Michael Walker, is the authority that controls Brentwood Library for the purposes of Tenn. Code Ann. § 2-3-107(b)(2). Mr. Walker's actions at all relevant times for the purposes of this actions, constitute officials acts of the City of Brentwood.

On February 1, 2012, the Commission filed an Amended and Restated Petition[2] naming the City of Brentwood, Mayor, City Manager, Board of Commissioners, and Library Board as Defendants, seeking a declaratory judgment and a declaration of its rights under Tenn. Code Ann. §§ 2-3-101-107 and §§ 2-6-101-112 as to the following questions:

a. Whether the Election Commission has sole authority to designate polling places for election-day voting and early voting;
b. Whether [Appellees], as "authorit[ies] which ha[ve] the control of any building or grounds supported by taxation under the laws of this state," may

---

[2] The amended petition replaced a petition for writ of mandamus which had been filed in January. Matters related to the mandamus are not at issue in this appeal.

deny Williamson County Election Commission's application to make space available for early voting at Brentwood Library during the 2012 election cycle. c. Under what circumstances, if any, [Appellees] may deny the Election Commission's application to make space available for election-day voting and early voting.

The Commission also requested attorneys' fees pursuant to Tenn. Code Ann. § 2-12-101(c)(4) and costs pursuant to Tenn. Code Ann. § 29-14-111. On February 6 an agreed order was entered dismissing the Mayor, the City Manager, and the Board of Commissioners.

On February 10, the City and the Library Board ("Appellees") filed an Answer and Counterclaim in which it sought:

[A] declaration of rights regarding the extent of discretion vested in the Election Commission to designate polling places and early voting locations controlled by the City of Brentwood, and vested in the City of Brentwood to make judgments with respect to whether buildings controlled by the City are practicable locations for use as polling places when designated as such by the Election Commission.

In due course the Commission and the City filed motions for summary judgment.

The court granted the City's motion. The court held that Tenn. Code Ann. § 2-3-101(a) vests the Commission with the exclusive authority to designate polling places and that "the 'as practicable' requirement of Tenn. Code Ann. § 2-3-107(b)(1) obligates the Commission to reasonably negotiate with local governments (or the controlling authority) whose facilities the Election Commission seeks to use." The Court further held that the City did not abuse its discretion in determining that the Library was not a practicable location for early voting. The Commission appeals, raising the following issues:

1. Whether the Chancery Court erred in interpreting the Tennessee Elections Code to limit county election commissions' exclusive authority to designate voting locations by finding that local authorities have discretion to refuse such designation.
2. Whether the Chancery Court failed to appropriately apply the abuse of discretion standard to the facts of this case, when the undisputed evidence shows that the Williamson County Election Commission acted reasonably in designating Brentwood Library as an early voting location.

3. Whether the Chancery Court erred in concluding that there is no basis for an award of costs and attorneys' fees to the Election Commission under Tenn. Code Ann. § 29-14-111 and Tenn. Code Ann. § 2-12-101(c)(4).

## DISCUSSION

Summary judgment is appropriate if no genuine issues of material fact exist, and the movant meets its burden of proving that it is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.03; *Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). The parties herein each sought summary judgment and do not contend on appeal that genuine issues of material fact exist. Consequently, the issue before us is a matter of law which we review *de novo*, affording no presumption of correctness to the trial court's conclusions of law. *Rice v. NN, Inc. Ball & Roller Div.*, 210 S.W.3d 536, 542 (Tenn. Ct. App. 2006) (citing *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 43, 44-45 (Tenn. Ct. App. 1993)).

Election laws are codified at Tenn. Code Ann. § 2-1-101–2-19-208; statutes pertaining to county election commissions are contained at Tenn. Code Ann. § 2-12-101–2-12-210. In addition to specific responsibilities at Tenn. Code Ann. § 2-12-116(a), other statutes vest certain responsibilities in the county election commissions.

Tenn. Code Ann. § 2-3-101(a)(1) provides that the county election commission is responsible for designating polling places; the procedure for designating polling places is set out at Tenn. Code Ann. § 2-3-107:

(a) The county election commission shall designate as polling places only rooms which have adequate heat, light, space and other facilities, including a sufficient number of electrical outlets where voting machines are used, for the comfortable and orderly conduct of elections.
(b) (1) The commission shall, insofar as practicable, arrange for the use of public schools and other public buildings for polling places.
(2) Upon application of the commission, the authority which has the control of any building or grounds supported by taxation under the laws of this state shall make available the necessary space for the purpose of holding elections and adequate space for the storage of voting machines without charge. A reasonable sum may be paid for necessary extra janitor service. If a state park is to be used as a voting location, the park must establish the site for the polling place at least one (1) year prior to the date of the election, and the location of the polling site within the park may not change without the consent of the county election committee.

The Commission argues that the plain language of Tenn. Code Ann. § 2-3-101 and § 2-3-107 means that "local authorities must make space available upon an Election Commission's request, without condition." The City contends that the "insofar as practicable" wording of § 2-3-107(b)(1) gives the public building authorities the ability to reject the Commission's application for use of the public building as a polling place and that the "shall make available the necessary space for purpose of holding elections and adequate space for the storage of voting machines without charge[,]" wording of § 2-3-107(b)(2) is simply a directive to the public building authorities that they may not charge the commission for whatever space the City makes available to the Commission for holding elections. Taken together, the City argues, the statutes set forth a "collaborative framework for the use of public buildings as polling locations" which supports the determination that both the election commission and local authorities are vested with discretion in determining the practicability of a public building as a polling location.

In determining the meaning of the statute, we give effect to the language, and the legislature's intent; we do so without restricting or expanding the statute's meaning. *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381 (Tenn. 2009) (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)). "'When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application.'" *Overstreet v. TRW Commcercial Steering Div.*, 256 S.W.3d 626, 630-31 (Tenn. 2008) (quoting *Eastman Chem. Co. v. Johnson,* 151 S.W.3d 503, 507 (Tenn. 2004)). "In that instance, our obligation is to enforce the written language without reference to the broader statutory intent, the history of the legislation, or other sources." *Overstreet*, 256 S.W.3d at 630-31 (citing *Abels ex rel. Hunt v. Genie Indus. Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006)).

The plain language of Tenn. Code Ann. § 2-3-107(a) gives the sole responsibility for designating polling places to the county election commissions. Tenn. Code Ann. § 2-3-107(b) requires the commission to designate polling places in public schools or other public buildings, leaving the determination as to whether a particular building is practicable to the commission's judgment; when the use of a public building is not practicable, the commission may designate a private building, in accordance with Tenn. Code Ann. § 2-3-107(c). The wording of Tenn. Code Ann. § 2-3-107(b)(2) that "the authority which has control of the building . . . shall make available the necessary space for the purpose of holding elections . . . without charge" is a clear and unambiguous statement of the role of the building authority under the election laws and a mandate to the authority to make public buildings which have been deemed suitable by the commission for holding elections available.[3]

---

[3]  Our reading of the statute, as well as the other statutes which set forth the varied and various

(continued...)

Accordingly, the court erred in granting the City's motion for summary judgment and in denying the Commission's.[4]

The Commission lastly contends that the trial court erred when it denied the Commission's claim for attorneys' fees and assessed costs pursuant to Tenn. R. Civ. P. 54.04(1) against the Commission.

Tenn. Code Ann. § 2-12-101(c)(4) provides that "[i]f, in order to properly discharge its duties, the county election commission has to bring legal action against a county or municipality, the compensation for the commission's legal representation shall be borne by the county or municipality as the case may be." In this declaratory judgment action, we have held that the Commission has the sole responsibility to designate polling locations and it is the duty of public building authorities to make public buildings available for voting. The Commission's request to use the Brentwood Library building was denied and we deem it appropriate for the Commission to seek clarification of its responsibilities, as well as those of the City, for purposes of each performing its responsibilities in the future; an award of attorneys' fees pursuant to § 2-12-101(c)(4) is, accordingly, appropriate. We reverse the trial court's denial of fees and remand the case for a hearing on the issue of attorneys' fees.

The court taxed costs to the Commission, pursuant to Tenn. R. Civ. P. 54.04(1). Inasmuch as we have reversed the decision of the trial court, we reverse the award of costs and remand for further consideration in accordance with this opinion.

---

[3](...continued)
responsibilities of county election commissions, leads us to reject the City's contention that the "shall make available the necessary space for purpose of holding elections and adequate space for the storage of voting machines without charge[,]" wording of Tenn. Code Ann. § 2-3-107(b)(2) "only functions to disallow public authorities from charging county election commissions for the use of their buildings as polling places." The language that the building is to be made available "without charge" is an additional instruction to the building authority.

[4] Our disposition of this issue pretermits our consideration of the second issue raised by the Commission.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed and the case remanded for further proceedings in accordance with this opinion.


_____
RICHARD H. DINKINS, JUDGE