IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 6, 2013

IN RE CAYLEE R. M. F.[1]

**Appeal from the Chancery Court for Hawkins County**
**No. 2011-AD-25     Thomas R. Frierson, II, Chancellor**

_____

**No. E2013-00621-COA-R3-PT-FILED-JANUARY 22, 2014**

_____

This is a parental termination appeal brought by the incarcerated biological father. The child at issue was placed with the petitioners shortly after her birth five years ago. The trial court found clear and convincing evidence to support the ground for termination and clear and convincing evidence that such termination was in the child's best interest. The father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

Gerald T. Eidson, Rogersville, Tennessee, for the appellant, James D.

Daniel G. Boyd, Rogersville, Tennessee, for the appellees, Jeffrey H. and Kimberly H.

Jack Marecic, Rogersville, Tennessee, guardian ad litem.

**OPINION**

**I.  BACKGROUND**

This action was instituted upon the filing of a petition for adoption by Jeffrey L. H.

_____

[1]To protect the identity of children in parental rights termination cases, we use initials instead of the last names of the parties.

and Kimberly R. H. ("Petitioners")[2] on September 22, 2011. Petitioners obtained physical custody of Caylee R. M. F. (D.O.B. 11.9.2008) ("the Child") on November 13, 2008, and later obtained legal custody pursuant to an order of the Hawkins County Juvenile Court on January 7, 2009.[3] Service was perfected on James D. ("Father") on October 17, 2011, at the federal correctional facility where he is housed while serving convictions for possession of a firearm by a felon and conspiracy to possess and distribute cocaine. Father's incarceration began April 15, 2008, approximately seven months before the Child was born.[4]

Father responded to the adoption petition in writing as follows:

> This petition for adoption is filled with untruths. . . . I have wrote to the petitioners son on many occa[s]ions to ascertain the welfare and wellbeing of Caylee because that was the only address I had to contact anyone other than Caylees great grandparents, who I have called on num[e]rous occa[s]ions, to no avail.
>
> The petition goes on to say that I have had a wanton disregard for the welfare of the child, But I ask you, "How Can That be, when I have had siblings, and my uncle, Call the only Relatives, the great grandparents . . . and I have called and written myself, and Begged and pleaded for any Information as to the whereabouts and welfare of the Mother, Nicole F[ ], and or Caylee F[ ]. I was never answered and when my family got through they were either Hung-up on, or most Recently, was told no one has seen Nicole F[ ], the mother, for 8 months. Nichole F[ ] who, until Recently Sent me pictures, which I still have Regularly. She gave me an address to the petitioners son, One Daniel H[ ] . . . who I wrote to and rec[ei]ved from, Num[e]rous letters all of which was me Trying to be a part of Caylees life in the only way I was able.
>
> I was prevented from Contacting the petitioners . . . or my

---

[2]The mother of the child is the daughter of Kimberly H.'s sister , making the child Kimberly H.'s great niece.

[3]Case No. HJ-08-1379. Father asserts he was never contacted regarding this proceeding.

[4]According to Father, his anticipated release date is August 2014.

daughter, at every Turn. Daniel H[ ], the petitioners son, wrote me and because I asked for the address of where Caylee was staying, told me his mother would be angry with him for giving out th[ei]r address to me, but that he would give Caylee the letters and drawings and pictures I sent to her if I sent them to him which I did. I also have Federal Employees that can Testify to my feelings about being in Caylees life, namely my Case Manager.

Upon the hearing of this matter, Father appeared telephonically.[5] He testified that he makes about $20 a month in prison, but knew of no address to send support for the Child prior to being served with the petition at issue. On cross-examination, Father testified that he was selling drugs in the early part of the year that the Child was born:

> Q: . . . Were you selling drugs during the course of early 2008, January and February?
>
> A: Yes, Sir.

During his testimony, Father acknowledged his prior conviction for armed robbery.

The trial court found that in addition to the current convictions for possession of a firearm by a felon and conspiracy to possess and distribute cocaine, Father previously had been convicted of armed robbery and participated in the sale of drugs. It was further determined by the court that no present, meaningful relationship between Father and the Child ever had been established. The court concluded that a change of caretakers and physical home environment likely would have an adverse effect on the Child's emotional well being, as a strong bond exists between the Child and the Petitioners. Accordingly, the court found clear and convincing evidence supported the ground asserted for termination of Father's parental rights and clear and convincing evidence established that termination was in the Child's best interest.

## II. ISSUE

The issue on appeal is as follows:

Whether the court properly terminated Father's parental rights

---

[5]This appeal does not address any issues regarding the biological mother of the Child.

on the ground that Father has shown a wanton disregard for the
welfare of the Child.

## III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97. "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), abrogated on other grounds by *In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental rights termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

The Tennessee Supreme Court has provided guidance in reviewing cases involving the termination of parental rights:

A reviewing court must review the trial court's findings of fact de novo with a presumption of correctness under [Rule 13(d) of the Tennessee Rules of Appellate Procedure]. *See In re Adoption of A.M.H.*, 215 S.W.3d [793,] 809 [(Tenn. 2007)]. In light of the heightened burden of proof in proceedings under [Tennessee Code Annotated section] 36-1-113, *the reviewing court must then make its own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim. State Dep't of Children's Servs. v. Mims*, 285 S.W.3d [435,] 447-48 [(Tenn. Ct. App. 2008)]; *In re Giorgianna H.*, 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006); *In re S.M.*, 149 S.W.3d 632, 640 n. 13 (Tenn. Ct. App. 2004). Appellate courts conduct a de novo review of the trial court's decisions regarding questions of law in termination proceedings. However, these decisions, unlike the trial court's findings of fact, are not presumed to be correct. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010) ]; *In re Adoption of A.M.H.*, 215 S.W.3d at 809.

*In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010) (emphasis added).

## IV. DISCUSSION

Tennessee Code Annotated section 36-1-113 provides the grounds for termination of parental rights. The applicable provisions read as follows:

**36-1-113. Termination of parental rights.** – (a) The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

(b) The prospective adoptive parent . . . shall have standing to file a petition . . . to request termination of parental or guardianship rights . . . .

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that

the grounds for termination of parental or guardianship rights
have been established; and

(2) That termination of the parent's or guardian's rights is in the
best interests of the child.

\* \* \*

(g) Initiation of termination of parental or guardianship rights may be based
upon any of the grounds listed in this subsection (g). . . :

(1) Abandonment by the parent or guardian, as defined in § 36-
1-102, has occurred . . . .

Tenn. Code Ann. §§ 36-1-113(a) - (g)(1) (Supp. 2012). In that Father was incarcerated for
approximately seven months prior to the birth of the Child, Tennessee Code Annotated
section 36-1-102(1)(A)(iv) provides the definition of abandonment we must consider:

A parent or guardian is incarcerated at the time of the institution of an action
or proceeding to declare a child to be an abandoned child, or the parent or
guardian has been incarcerated during all or part of the four (4) months
immediately preceding the institution of such action or proceeding, and either
has willfully failed to visit or has willfully failed to support or has willfully
failed to make reasonable payments toward the support of the child for four (4)
consecutive months immediately preceding such parent's or guardian's
incarceration, or **the parent or guardian has engaged in conduct prior to
incarceration that exhibits a wanton disregard for the welfare of the child
. . . .**

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (emphasis added). The party petitioning for
termination carries the burden of proof. *In re M.J.B.*, 140 S.W.3d at 653. The requirements
ensure that each parent receives the constitutionally required "individualized determination
that a parent is either unfit or will cause substantial harm to his or her child before the
fundamental right to the care and custody of the child can be taken away." *In re Swanson*,
2 S.W.3d 180, 188 (Tenn. 1999).

The pertinent portion of the trial court's ruling is as follows:

With reference to the Respondent, [Father], the Petitioners . . . assert that he
has engaged in a course of conduct which shows a wanton disregard for the

-6-

welfare of the child which constitutes abandonment for termination of his parental rights pursuant to T.C.A. [§] 36-1-102(1)(A)(iv). With reference to statutory abandonment by incarcerated persons, the court in *In Re: E.M.S.*, 2009 LEXIS 596 (Tenn. App. 2009) explained as follows:

* * *

This court has stated that Tenn. Code Ann. § 36-1-102(A)(iv) "reflects the commonsense notion that parental incarceration is a strong indicator that there may be other problems in the home that threaten the welfare of the child." *In re Audrey S.*, 182 S.W.838, 866 (Tenn. Ct. App. 2005). Ultimately, "[a] parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child." *Id.* But the second test for abandonment under Tenn. Code Ann. § 36-1-102(1)(A)(iv) does not make incarceration alone a ground for abandonment. Under the second part of the test, an incarcerated or recently incarcerated parent can be found guilty of abandonment "only if the court finds, by clear and convincing evidence, that the parent's pre-incarceration conduct displayed a wanton disregard for the welfare of the child." *Id.* Accordingly, a parent's incarceration serves "as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *Id.*

The pre-incarceration conduct referred to in Tenn. Code Ann. § 36-1-102(1)(A)(iv) is *not* limited to acts during the four-month period immediately preceding the incarceration. *In re Jeremiah T.*, 2009 Tenn. App. LEXIS 173, 2009 WL 1162860, at *8 (Tenn. Ct. App. Apr. 30, 2009) (no Tenn. R. App. P. 11 application filed) citing *In re Audrey S.*, 182 S.W.3d at 871). It is well established that probation violations, repeated incarcerations, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the child's welfare. *In re Audrey S.*, 182 S.W.3d at 868 (citing *State Dep't of Children's Servs. v. J.M.F.*, 2005 Tenn. App. LEXIS 5, 2005 WL 94465, at *7-8 (Tenn. Ct. App. Jan. 11, 2005) (perm. app. denied Tenn. Mar. 21, 2005); *In re C. LaC.*, 2004 Tenn. App. LEXIS 172, 2004 WL 533937, at *7 (Tenn. Ct. App. Mar. 17, 2004) (no Tenn. R.

App. P. 11 app. filed); *In re C.T.S.*, 156 S.W.3d 18, 25 (Tenn. Ct. App. 2004); *In re C.W.W.*, 37 S.W.3d 467, 474-75 (Tenn. Ct. App. 2000)).

In construing the provisions of T.C.A. [§] 36-1-102(1)(A)(iv), the court in *In Re: Adryan L.B.*, 2012 Tenn. App. LEXIS 745 (2012) explained as follows:

> In construing Tenn. Code Ann. § 36-1-102(1)(A)(iv), we must apply the most basic principle of statutory construction which is to ascertain and give effect to legislative intent without broadening the statute beyond its intended scope. *See State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008). When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use. *Overstreet v. TRW Commercial Steering Div.*, 256 S.W.3d 626, 630 (Tenn. 2008). Tenn. Code Ann. § 36-1-102(1)(A)(iv) requires only that a parent be incarcerated in order to trigger its provisions, and, as the statute is unambiguous, we apply its plain meaning. . . .

The evidence supports a determination that in 1995, [Father] was convicted of armed robbery and received an eight year sentence. His incarceration through the Tennessee Department of Corrections continued from 1995 through 2001. According to the testimony of [Father], during January and February of 2008, he was participating in the sale of drugs. His subsequent criminal behavior during March and April 2008 resulted in criminal convictions. His incarceration began April 15, 2008. Although T.C.A. [§] 36-1-102(1)(A)(iv) does not define "wanton disregard," Tennessee courts have held that "a parent's drug abuse and criminal activity can constitute a wanton disregard for the welfare of the child," *In Re: Daysia D., et al.*, 2012 Tenn. App. LEXIS 697 (2012). . . .

\* \* \*

The pattern of conduct by [Father] detailed above illustrates a wanton disregard for the welfare of the child as contemplated by the statute. This Court concludes that Petitioners have shown by clear and convincing evidence that [Father]'s pattern of behavior resulting in incarceration displayed a wanton disregard for the welfare of the minor child. Accordingly, Petitioners have shown a statutory basis for the termination of [Father]'s parental rights [to] the minor child.

The testimony of Father established a pattern of criminal behavior resulting in his recent incarceration. Such behavior has been found to "constitute conduct that exhibits a wanton disregard" for a child's welfare. *See In re Audrey S.*, 182 S.W.3d at 868. Accordingly, the evidence does not preponderate against the trial court's findings that clear and convincing evidence existed to establish the termination ground alleged.

## B. BEST INTEREST

Having concluded that there was clear and convincing evidence supporting the statutory ground to terminate Father's parental rights, we must consider whether termination of Father's parental rights was in the best interest of the Child. In making this determination, we are guided by the non-exhaustive list of factors provided in Tennessee Code Annotated section 36-1-113:

> (i) In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:
>
>> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>>
>> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>>
>> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>>
>> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>>
>> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
>>
>> (6) Whether the parent or guardian, or other person residing with

the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36–5–101.

Tenn. Code Ann. § 36-1-113(i) (Supp. 2012). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[ ] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

The proof clearly reveals that termination of Father's parental rights was in the Child's best interest. As noted by the trial court:

The evidence supports a determination that [the Child] has been in the care and physical custody of the Petitioners since November 13, 2008. The [C]hild has developed strong bonds of love and affection with the Petitioners. [They] likewise share bonds of love and affection with the minor [C]hild, having supported and nurtured her since her birth.

[Father] has established no relationship with the [C]hild as he has been incarcerated during the entirety of her life. He has shown progress during his incarceration by completing a Drug Abuse Education Program, a Vocational Trades Small Appliance Exploratory Course and a Vocational Trades Domestic Refrigeration Course. This Court concludes that the manifest best interest of the minor [C]hild will be served by terminating the parental rights of [Father].

The record demonstrates that the Child has become attached to the Petitioners and is fully integrated into their family. The Petitioners' home is healthy and safe. A change in caretakers and physical home environment likely would have an adverse effect on the Child's well being. Our focus must be on what is in the best interest of the Child before us. In consideration of the foregoing factors, the trial court correctly concluded that the termination of Father's parental rights is in the best interest of the Child.

## V. CONCLUSION

The judgment of the trial court is affirmed, and this cause is remanded. The costs of the appeal are assessed to the appellant, James D.

_____
JOHN W. McCLARTY, JUDGE