IN THE COURT OF WORKERS' COMPENSATION CLAIMS
 AT JACKSON

OCTAVIO PEREZ ) Docket No.: 2015-07-0148
 Employee, )
v. ) State File Number: 90173-2014
SHIPPER'S CHOICE )
 Employer. ) Judge Amber E. Luttrell

 EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS AND
 DENYING TEMPORARY DISABILITY BENEFITS

 This matter came before the undersigned workers' compensation judge upon the
Request for Expedited Hearing filed by the employee, Octavio Perez, pursuant to
Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is the
compensability of Mr. Perez's right-shoulder claim and his entitlement to medical and
temporary disability benefits. The legal issues are 1) whether Mr. Perez came forward
with sufficient proof of a compensable right-shoulder injury for the Court to conclude he
is likely to prevail at a hearing on the merits, 2) whether Shipper's Choice is entitled to
compel Mr. Perez to submit for an IME, and 3) whether it appropriately suspended Mr.
Perez's workers' compensation benefits upon his refusal to submit for an IME. For the
reasons set forth below, the Court finds Mr. Perez carried his burden of proof showing he
is likely to prevail at a hearing on the merits regarding medical benefits and, accordingly,
grants his request for medical benefits. The Court further finds Mr. Perez has not come
forward with sufficient proof, at this time, regarding temporary disability benefits and
denies those requested benefits. Finally, the Court finds Shipper's Choice's Motion to
Compel IME unreasonable and denies the same.

 History of Claim

 Mr. Perez is a sixty-four-year-old resident of McNairy County, Tennessee. (T.R.
1.) He works as a truck driver for Shipper's Choice. On November 13, 2014, Mr. Perez
traveled to pick up a load of crushed cars in the course and scope of his employment.
Transporting the load of cars also involved securing the cars for travel on the truck.

 After Mr. Perez arrived at this destination and the cars were loaded, he threw

 1
chains over the cars to secure them to the truck. After throwing the third chain, his right
shoulder "popped" and his arm "felt dead." He immediately called his dispatcher, Kenny
Pool, and reported the work injury. Shippe.r's Choice offered Mr. Perez a panel of
physicians, and he selected Dr. Brian McCarver for treatment.

 Mr. Perez saw Dr. McCarver on November 18, 2014, and complained of right-
shoulder pain since his work injury. (Ex. 1 at 3.) He gave Dr. McCarver a history of
injuring his right shoulder while throwing a thirty-pound chain over a load. !d.
Following a physical exam, Dr. McCarver diagnosed right-shoulder pain and prescribed a
Medrol dose pack. He continued treating Mr. Perez conservatively through December
22, 2014, and then referred him to Dr. Keith Nord, an orthopedist, for further evaluation.
!d. at 4-11.

 Mr. Perez saw Dr. Nord on January 7, 2015. (Ex. 1 at 106.) He gave Dr. Nord a
detailed history of his November 13, 2014 work injury, consistent with his reported right-
shoulder injury. Upon clinical exam, Dr. Nord diagnosed a complete rotator cuff tear.
He ordered an MRI and, in his work status note, opined Mr. Perez's right-shoulder
condition was work related. !d. at 105. Dr. Nord imposed work restrictions prohibiting
Mr. Perez from performing overhead work with the right arm and lifting more than ten
pounds 1 with the right arm. !d. at 105.

 Mr. Perez returned to Dr. Nord on January 21, 2015. !d. at 115. Upon exam and
review of the MRI results, Dr. Nord confirmed his diagnosis of a complete tear of the
rotator cuff and recommended a right reverse total shoulder arthroplasty. !d. at 113. The
Work Status Note indicated Dr. Nord assigned restrictions of no overhead work with the
right arm and no use of outstretched right arm. !d. at 112.

 Shipper's Choice submitted Dr. Nord's surgical recommendation to Wright's
Rehabilitation Services for utilization review of the medical necessity of a reverse total
shoulder arthroplasty. !d. at 1-2. Dr. Anthony Melillo performed the review and opined
the recommended surgery was not reasonable or appropriate treatment at this time.
Instead, Dr. Melillo recommended the following:

 [T]reatment options would be a steroid injection followed by formal PT for
 4-6 weeks. If no better, I would then perform an arthroscopy to determine
 if there is any RC tendon to be repaired or debrided. Post arthroscopy (and
 potential limited repair) addition [sic] PT is required. If all this fails
 (persistent pain and functional limitations), then a RSA would be indicated.

!d.

1
 The Court notes Dr. Nord's office note stated, "light duty no overhead work and no lifting greater than 20 lbs."

 2
 Mr. Perez appealed the UR decision to the Bureau's medical director, Dr. Robert
Snyder. By letter dated March 18, 2015, Dr. Snyder agreed with the UR denial of the
recommended surgery based upon medical nece.ssity. (Ex. 2.)

 At some point following Dr. Nord's surgical recommendation, Shipper's Choice
requested Mr. Perez see Dr. David Sickle at Jackson Clinic for an independent medical
evaluation (IME). Upon advice of counsel, Mr. Perez declined the evaluation. As a
result, Shipper's Choice suspended Mr. Perez's temporary disability benefits and medical
benefits.

 Mr. Perez testified he never sustained any injury to his right shoulder or had any
treatment specifically for a right-shoulder injury prior to his November 13, 2014 work
injury. He sustained a prior work injury to his left shoulder in 2007 or 2008 and
underwent surgery for the injury in May 2010. (Ex. 1 at 34.) He also testified to a prior
right-elbow injury in December 2013.

 The parties admitted into evidence two prior medical records from Dr. McCarver
at the expedited hearing. According to an April 29, 2009 record, Mr. Perez reported a
history of "pulling on a bar to unloosen straps on April 20, 2009, and reported hearing a
crack and developed pain to R neck." (Ex. 4.) Dr. McCarver further noted, "pain is
radiating down arm." Dr. McCarver diagnosed "minor diagnosis of shoulder pain, right"
and "minor diagnosis of muscle strain." !d. He prescribed Robaxin and a Medrol
Dosepak. Mr. Perez returned for one follow up visit on May 5, 2009, and reported his
pain was much improved. Dr. McCarver released him to return as needed. !d.

 Concerning his 2009 treatment, Mr. Perez testified he recalled pain in his neck that
traveled down his right arm. While he did not dispute Dr. McCarver's records, Mr. Perez
denied any injury to his right shoulder in 2009 or that he saw Dr. McCarver specifically
for his right shoulder.

 Mr. Perez disputed the wage statement filed by the employer in this case. (Ex. 3.)
He testified the wage statement filed reflects total wages of $27,318.84. However, he
earned gross wages of approximately $40,000 during the relevant time period. Mr. Perez
testified Shipper's Choice paid by the mile. It added his miles each week and reduced his
gross pay by his weekly per diem, which Shipper's Choice did not tax as income. Mr.
Perez acknowledged his per diem represented reimbursement of expenses for meals.

 Mr. Perez filed a Petition for Benefit Determination seeking the reinstatement of
medical and temporary disability benefits after Shipper's Choice suspended his benefits
for failure to submit for an IME. The parties did not resolve the disputed issues through
mediation, and the mediating specialist filed a Dispute Certification Notice. Mr. Perez
filed a Request for Expedited Hearing, and this Court heard the matter on February 9,
2016. Shipper's Choice filed a Motion to Compel Independent Medical Evaluation based

 3
upon Tennessee Code Annotated section 50-6-204(d)(1) (2015) and Tennessee Rule of
Civil Procedure 35.01. The Court heard the Motion at the expedited hearing.

 Mr. Perez asserted he sustained a compensable work injury to his right shoulder
for which Shipper's Choice provided authorized treatment with Drs. McCarver and Nord.
He argued Dr. Nord opined his right-shoulder injury was causally related to his
employment. He further argued Dr. Nord's recommendation of right reverse total
shoulder arthroplasty is presumed medically necessary pursuant to Tennessee Code
Annotated 50-6-204(a)(3)(H) (2015). However, Mr. Perez expressed a willingness to
return to Dr. Nord for conservative treatment as outlined by the UR physician. Mr. Perez
also argued Shipper's Choice has no right to a second opinion from Dr. Sickle, and
improperly terminated his medical and temporary disability benefits. Finally, Mr. Perez
requested temporary disability benefits based upon his yearly estimated gross wages of
$40,000.

 Shipper's Choice countered it suspended Mr. Perez's medical and temporary
disability benefits because he refused to submit to a request for an employer IME with
Dr. Sickle pursuant to Tennessee Code Annotated 50-6-204(d)(1) (2015) and Tennessee
Civil Procedure Rule 35.01. It argued the IME request was reasonable because Dr.
Sickle is local to Mr. Perez and because Shipper's Choice questions causation for Mr.
Perez's right-shoulder injury. It further argued Mr. Perez could resume conservative
treatment with Dr. Nord if he submitted for the IME with Dr. Sickle.

 Findings of Fact and Conclusions of Law

 Because this case is in a posture of an expedited hearing, Mr. Perez need not prove
every element of his claim by a preponderance of the evidence in order to obtain relief.
McCord v. Advantage Human Resourcing, No. 2014-06-0063, 2015 TN Wrk. Comp.
App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead,
he must come forward with sufficient evidence from which this court might determine he
is likely to prevail at a hearing on the merits. !d.; Tenn. Code Ann. § 50-6-239(d)(l)
(20 15). This lesser evidentiary standard "does not relieve an employee of the burden of
producing evidence of an injury by accident that arose primarily out of and in the course
and scope of employment at an expedited hearing, but allows some relief to be granted if
that evidence does not rise to the level of a 'preponderance of the evidence."' Buchanan
v. Carlex Glass Co., No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6
(Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). In analyzing whether he has met his
burden, the Court will not remedially or liberally construe the law in his favor, but
instead shall construe the law fairly, impartially, and in accordance with basic principles
of statutory construction favoring neither Mr. Perez nor Shipper's Choice. See Tenn.
Code Ann. § 50-6-116 (20 15).

 4
 Analysis

 To be compensable, Mr. Perez must show his alleged injury arose primarily out of
and in the course and scope of his employment. Tenn. Code Ann. § 50-6-102(14) (2015).
To do so, he must show his injury was caused by an incident, or specific set of incidents,
identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(14)(A)
(20 15). Further, he must show, "to a reasonable degree of medical certainty that [the
injury] contributed more than fifty percent (50%) in causing the ... disablement or need
for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C)
(20 15). "Shown to a reasonable degree of medical certainty" means that, in the opinion
of the treating physician, it is more likely than not considering all causes as opposed to
speculation or possibility. Tenn. Code Ann.§ 50-6-102(14)(D) (2015).

 The Court finds Mr. Perez appeared calm, at ease, self-assured, steady, confident,
forthcoming, reasonable, and honest in providing his testimony. These characteristics,
according to the Tennessee Supreme Court, are indicia of reliability. See Kelly v. Kelly,
445 S.W.3d 685, 694-695 (Tenn. 2014). Mr. Perez credibly testified he injured his right
shoulder in a specific incident on November 13, 2014, when, in the course and scope of
his employment, he "threw chains over a load" and his right shoulder "popped" and his
"right arm felt dead." Mr. Perez's testimony concerning his acute injury was
uncontroverted. Based upon the testimony of Mr. Perez and the medical records, the
Court finds he is likely to prevail at a hearing on the merits proving a specific event
injuring his right shoulder identifiable by time and place of occurrence. See Tenn. Code
Ann. § 50-6-239(d)(l) (2015).

 In addition, the Court finds Mr. Perez also carried his burden of proving medical
causation by presenting expert medical proof. Except in "the most obvious, simple and
routine cases," a workers' compensation claimant must establish by expert medical
testimony that he or she is injured and that there exists a causal relationship between the
injury and the claimant's employment activity. Wheetley v. State, No. M20 13-01707-
WC-R3-WC, 2014 Tenn. LEXIS 476 (Tenn. Workers' Comp. Panel June 25, 2014)
(citing Excel Polymers, LLC v. Broyles, 302 S.W.3d 268, 274 (Tenn. 2009); Cloyd v.
Hartco Flooring Co., 274 S.W.3d 638, 643 (Tenn. 2008)). Following the work injury,
Mr. Perez underwent authorized medical treatment with Dr. Nord, who diagnosed a
complete tear of the right rotator cuff and recommended surgery. Dr. Nord indicated on a
work status note that Mr. Perez's shoulder condition was work related. Pursuant to
section 50-6-102(14)(E) (2015), Dr. Nord's causation opinion is afforded a presumption
of correctness that is rebuttable only by a preponderance of the evidence. Shipper's
Choice presented no contrary medical proof to rebut Dr. Nord's opinion. The Court finds
Dr. Nord's causation opinion sufficient evidence, at this expedited hearing stage, for the
Court to conclude Mr. Perez is likely to prevail at a hearing on the merits concerning
causation.

 5
 Mr. Perez provided sufficient proof both that he had an accident at work, and that
the accident is the cause of his injury and need for medical treatment. Thus, as a matter
of law, the Court finds Mr. Perez came forward with sufficient evidence from which this
Court may conclude he is likely to prevail at a hearing on the merits to prove his injury
arose primarily out of and in the course and scope of his employment.

 Employer's Motionfor !ME

 Following Dr. Nord's surgical recommendation, Shipper's Choice filed a motion
requesting the Court compel Mr. Perez to submit to an IME with Dr. David Sickle at
Jackson Clinic. It relied upon Tennessee Code Annotated section 50-6-204(d)(l), which
provides:

 The injured employee must submit to examination by the employer's
 physician at all reasonable times if requested to do so by the employer, but
 the employee shall have the right to have the employee's own physician
 present at the examination, in which case the employee shall be liable to the
 employee's physician for that physician's services.

In suspending Mr. Perez's medical and temporary disability benefits, Shipper's Choice
relied upon the following section:

 If the injured employee refuses to comply with any reasonable request for
 examination or to accept the medical or specialized medical services that
 the employer is required to furnish under this chapter, the injured
 employee's right to compensation shall be suspended and no compensation
 shall be due and payable while the injured employee continues to refuse.

!d. at ( d)(8). Shipper's Choice further moved the Court to order Mr. Perez to submit to
the IME pursuant t.o Tennessee Rule of Civil Procedure 35.01, which provides:

 When the mental or physical condition of a party .. .is in controversy, the
 court in which the action is pending may order the party to submit to a
 physical or mental examination by a suitably licensed or certified
 examiner[.] The order may be made only on motion for good cause shown
 and upon notice to the person to be examined and to all parties and shall
 specify the time, place, manner, conditions, and scope of the examination[.]

 Shipper's Choice cited the Tennessee Supreme Court case, Overstreet v. TRW
Cammer. Steering Div., 256 S.W.3d 626, 629 (2008), in support of its motion. In
Overstreet, the Supreme Court held the following regarding the employer's request for
IME: "[I]n our view, a plain reading of Tennessee Code Annotated section 50-6-204
gives the employer a right to compel the employee to undergo an independent medical

 6
evaluation, so long as the request is 'reasonable.'" The Court further held the following:

 In our assessment, the current version of the Tennessee Workers'
 Compensation Act provides the employer with the right to have the
 employee examined by a doctor of its choosing. It is only when the request
 is unreasonable that the employer cannot exercise the right. As stated, the
 trial judge is vested with discretion in determining whether the
 circumstances warrant the examination.

Id. at 637, citing Tibbals Flooring Co. v. Marcum, 404 S.W.2d 498, 500 (Tenn. 1966).

The Court further held:

 By contesting liability, an employer does not forfeit the entitlement to
 compel the employee to submit to an examination conducted by a physician
 of the employer's choosing. When causation is in dispute, standards of
 fairness lend themselves to the notion that the employer should have the
 benefit of an expert who has had the opportunity to examine the employee's
 alleged injury.

Id., citing Thomas v. Aetna Life & Cas. Co., 812 S.W.2d 283 (Tenn. 1991).

 The Supreme Court in Overstreet further addressed the test to determine whether
the employer made a proper request for an IME under Tennessee Rule of Civil Procedure
35.01. The Court held, "By its own terms, Rule 35.01 requires the moving party to
establish two things: (1) 'the mental or physical condition. . .of a party. . .is in
controversy' and (2) 'good cause' for the examination exists." Id. at 638. The Court
explained, "With regard to the second question, when a trial court finds that an employer
has made a reasonable request for examination under Tennessee Code Annotated section
50-6-204(d), this also qualifies as 'good cause' under Rule 35.01." Id. Finally, the
Supreme Court instructed, "[I]f the employer's request is unreasonable, the trial court
should deny the request, but must specifically state its reasons in the record." Id. at 639.

 Mindful of the principles set forth in Overstreet, the determinative question before
this Court is whether Shipper's Choice's request for Mr. Perez to submit for an IME is
reasonable under the circumstances. For the following reasons, the Court finds Shipper's
Choice's request to compel Mr. Perez to an IME unreasonable and denies the motion.

 As the basis for its motion, Shipper's Choice argued Mr. Perez suffered a previous
right-shoulder injury raising a question as to the cause of Mr. Perez's current right-
shoulder injury and need for surgery. The Court notes the medical records filed with the
Court prior to the expedited hearing and stipulated by Shipper's Choice when the DCN
was filed, contained no records evidencing any prior right-shoulder injury. Moreover,

 7
Shipper's Choice failed to attach any records evidencing a prior injury to its motion. It
was not until the expedited hearing that Shipper's Choice presented two medical records
from Dr. McCarver from 2009. The parties admitted Dr. McCarver's two records into
evidence by agreement and Shipper's Choice relied upon those records in support of its
motion for IME.

 As previously mentioned, Mr. Perez saw Dr. McCarver on April 29, 2009, and
gave a history of "pulling on a bar to unloosen straps on April 20, 2009, and r~ported
hearing a crack and developed pain to R neck." (Ex. 4.) Dr. McCarver further noted,
"pain is radiating down arm." Dr. McCarver diagnosed "minor diagnosis of shoulder
pain, right" and "minor diagnosis of muscle strain." He prescribed Robaxin and a Medrol
Dosepak. Mr. Perez returned for one follow-up visit on May 5, 2009, and reported his
pain was much improved. Dr. McCarver released him to return as needed.

 There is no evidence before the Court that Mr. Perez ever sought any further
medical treatment for this "minor diagnosis of shoulder pain" after Dr. McCarver
released him on May 5, 2009. Mr. Perez, whom the Court found credible, admitted he
saw Dr. McCarver in 2009; however, he recalled seeing him for pain in the right side of
his neck. He testified he had no injury to his right shoulder. The Court notes Dr.
McCarver did not find Mr. Perez's condition in 2009 significant enough to perform an x-
ray or order any diagnostic testing. The Court finds these two records indicate Mr. Perez
suffered a muscle strain, which resolved with conservative treatment after two visits to
Dr. McCarver. Significantly, there is no evidence before this Court that Mr. Perez had
any difficulties with his right shoulder whatsoever, or sought any further treatment for his
right shoulder until five years later when he sustained his work injury on November 13,
2014.

 Furthermore, the evidence indicated Shipper's Choice accepted Mr. Perez's
workers' compensation claim as compensable and provided him authorized treatment
with Drs. McCarver and Nord. It appears it was not until Dr. Nord ordered surgery for
Mr. Perez's shoulder that Shipper's Choice questioned causation. While Shipper's
Choice could have corresponded with Dr. Nord, the authorized treating physician,
concerning any question regarding medical causation, it instead elected to insist Mr.
Perez see a different physician for an IME.

 The Court further finds that while Mr. Perez argued Dr. Nord's surgical
recommendation is presumed reasonable and necessary, he nevertheless agreed to comply
with the UR physician's recommendation for specific conservative treatment instead of
requesting surgery at this point. However, Shipper's Choice would not allow Mr. Perez
to return to Dr. Nord for the UR recommended treatment unless he submitted to an IME.

 As previously stated, Shipper's Choice relied upon the Supreme Court decision in
Overstreet in support of its argument. It also argued the Supreme Court Workers'

 8
Compensation Appeals Panel case, Myers v. Vanderbilt, No. M2008-02009-WC-R3-WC,
2010 Tenn. LEXIS 443, at *2 (Tenn. Workers' Comp. Panel May 11, 2010), in support of
its position. In both, the Supreme Court and Panel found the trial court abused its
discretion by not allowing the employer an IME. This Court finds the facts in Overstreet
and Myers distinguishable from the instant case.

 In Overstreet, the employee alleged work-related hearing loss, a gradually
occurring injury, which began two years after his retirement from the employer. 256
S.W.3d 626, 629 (2008)(emphasis added). In support of its motion for IME, the
employer argued Mr. Overstreet's hearing loss was not caused by his workplace
environment because he did not begin to suffer any hearing impairment until two years
after his retirement. !d. at 630. The employer argued independent medical testimony
was necessary to, "advance its theories of alternative causation, such as Overstreet's
advancing age, his operation of a riding lawnmower without ear protection, or his
occasional visits to noisy casinos in Tunica and Las Vegas." !d. In finding the trial court
abused its discretion by denying the employer's motion for IME, the Supreme Court held,
"the trial court simply found TRW should not be entitled to an independent medical
evaluation with Dr. Bronn Rayne and denies the same. The trial court did not address the
reasonableness of the request." !d. at 637.

 In Myers, the employee alleged an occupational disease, a latex allergy. Myers v.
Vanderbilt, No. M2008-02009-WC-R3-WC, 2010 Tenn. LEXIS 443, at *2 (Tenn.
Workers' Comp. Panel May 11, 2010). Ms. Myers treated with multiple physicians who
disagreed regarding the precise cause of her allergy. !d. The employer filed a motion to
compel Ms. Myers to submit to an examination by a dermatologist, with an
accompanying referral for testing by another dermatologist. !d. at 8. The trial court
denied employer's motion reasoning that Ms. Myers had "become very distrustful of the
whole process and I don't really know that another physician's opinion is going to help
the Court make a decision." !d. at 12. The Panel held, "[I]n light of the continuing
disagreement among the physicians regarding the precise cause of Ms. Myers' allergies,
and therefore, the means to treat them, we have concluded that the trial court erred by
finding that Vanderbilt' s request for a medical examination was unreasonable." !d. at 16.

 In the present case, Mr. Perez is not suffering from an occupational disease for
which multiple physicians disagree over the cause. Rather, the uncontroverted proof was
that Mr. Perez suffered an acute traumatic injury to his right shoulder while performing
his duties in the course and scope of his employment, which Dr. Nord indicated was
work-related. The only proof Shipper's Choice offered in support of its request for IME
was a diagnosis of a mild muscle strain in 2009, five years prior to Mr. Perez's work
injury. This Court finds Shipper's Choice stated basis for the request, the 2009 treatment
with Dr. McCarver, fails to constitute good cause to compel Mr. Perez submit to an IME
and suspend his workers' compensation benefits. Accordingly, under the facts of this
case, the Court finds Shipper's Choice's IME request is not reasonable. Shipper's

 9
Choice's Motion to Compel IME is denied.

 Temporary Disability Benefits

 On the issue of temporary disability benefits, the proof before the Court at this
time is limited. The parties agreed Shipper's Choice suspended payment of Mr. Perez's
temporary disability benefits at some point following his refusal to submit for an IME.
This indicates Shipper's Choice paid temporary disability benefits for some period of
time. However, the parties submitted no evidence of the period of time Shipper's Choice
paid benefits or the date it ceased paying benefits. Since the Court finds Shipper's
Choice's IME request was unreasonable, it should not have ceased Mr. Perez's benefits.

 Dr. Nord placed Mr. Perez on light duty with no overhead work and no lifting
greater than ten pounds with the right arm on January 7, 2015. Two weeks later, on
January 21, 2015, Dr. Nord recommended surgery and increased Mr. Perez's restrictions
to prohibit overhead work with the right arm and no use of the outstretched right arm.
The Court infers these restrictions were the basis for Shipper's Choice paying temporary
disability benefits. However, there is no specific proof before the Court regarding
whether or not Shipper's Choice could accommodate the restrictions and the specific time
period for which Mr. Perez seeks temporary disability. While the Court finds Mr. Perez's
benefits were wrongly suspended, there is no proof regarding any unpaid period of that
temporary disability at this time. Thus, the Court cannot order temporary disability
benefits at this time.

 Turning to the compensation rate, Mr. Perez disputed the wages listed in the wage
statement for determining his temporary disability benefit rate. (Ex. 3.) The wage
statement reflected total wages of $27,318.84. However, Mr. Perez testified he earned
gross wages of approximately $40,000 during the fifty-two-week period preceding his
accident. He testified Shipper's Choice paid by the mile. It added his miles each week
and reduced his gross pay by his weekly per diem, which was not taxed as income. Mr.
Perez acknowledged that his per diem represented reimbursement of expenses for meals.

 Shipper's Choice countered that Mr. Perez conceded the per diem represented an
expense reimbursement for meals. It argued the per diem was not earnings and should
not be included in his wages for determining his compensation rate.

 The Supreme Court Workers' Compensation Panel addressed a similar issue in
Gaines v. Am. Airlines, No. 01S01-9701-CV-00015, 1997 Tenn. LEXIS 416, at *2 (Tenn.
Workers' Comp. Panel Aug. 28, 1997). In Gaines, the employee's compensation
included an hourly wage for seventy hours a month plus a per diem of one dollar ($1.00)
per hour for each hour of overnight travel. !d. at 3-4. Like the present case, taxes were
not withheld from the employee's per diem and she did not report it as income to the IRS.
The Panel held, "Earnings, for the purpose of computing an injured employee's average

 10
weekly wage, include anything received by the employee under the terms of his
employment contract from which he realizes economic gain." !d. at 3, citing P&L
Constr. Co. v. Lankford, 559 S.W.2d 793, 795 (Tenn. 1978). The Panel concluded Ms.
Gaines' per diem was not earnings for purposes of computing the average weekly wage.
!d.

 Applying Gaines to the instant case, the Court finds Mr. Perez's per diem
represented non-taxed reimbursement of expenses for meals and is not included in
calculating his average week wage.

 In determining the proper compensation rate, the Court finds the wage statement
reflected five weeks for which Mr. Perez did not earn any wages. There is no proof
before the Court indicating why Mr. Perez earned no wages in weeks 4, 14, 32, 51 and 52.
Thus, the Court finds Mr. Perez's compensation rate is based only upon his earnings for
the fifty-two-week period reflected in the wage statement. The Court finds an average
weekly wage of$581.25 and compensation rate of$387.52 ($27,318.84 divided by forty-
seven).

IT IS, THEREFORE, ORDERED as follows:

 1. Shipper's Choice or its workers' compensation carrier shall promptly reinstate Mr.
 Perez's medical benefits by providing him medical treatment with Dr. Nord for his
 right-shoulder injury as outlined by the UR physician and pursuant to Tennessee
 Code Annotated section 50-6-204 (20 15).

 2. Mr. Perez's request for temporary disability benefits is denied at this time.

 3. The applicable compensation rate is $387.52 per week based on Mr. Perez's
 average weekly wage of$581.25.

 4. Shipper's Choice's Motion to Compel IME is denied.

 5. This matter is set for an Initial (Scheduling) Hearing on Monday, May 9, 2016, at
 9:00 a.m. Central time.

 6. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance
 with this Order must occur no later than seven business days from the date of entry
 of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3)
 (2015). The Insurer or Self-Insured Employer must submit confirmation of
 compliance with this Order to the Bureau by email to
 WCCompliance.Program@tn.gov no later than the seventh business day after
 entry of this Order. Failure to submit the necessary confirmation within the period
 of compliance may result in a penalty assessment for non-compliance.

 11
 7. For questions regarding compliance, please contact the Workers' Compensation
 Compliance Unit via email WCCompliance.Program@tn.go or by calling (615)
 253-1471.

 ENTERED this the 11th day of

Initial (Scheduling) Hearing:

 An Initial (Scheduling) Hearing has been set with Judge Luttrell, Court of
Workers' Compensation Claims. You must call 901-543-2668 or toll-free at 855-
543-5046 to participate in the Initial Hearing.

 Please Note: You must call in on the scheduled date/time to
participate. Failure to call in may result in a determination of the issues without
your further participation.

Right to Appeal:

 Tennessee Law allows any party who disagrees with this Expedited Hearing Order
to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of
Appeal, you must:

 1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

 2. File the completed form with the Court Clerk within seven business days of the
 date the Workers' Compensation Judge entered the Expedited Hearing Order.

 3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

 4. The appealing party is responsible for payment of a filing fee in the amount of
 $75.00. Within ten calendar days after the filing of a notice of appeal, payment
 must be received by check, money order, or credit card payment. Payments can be
 made in person at any Bureau office or by United States mail, hand-delivery, or

 12
 other delivery service. In the alternative, the appealing party may file an Affidavit
 of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing
 fee. The Affidavit of Indigency may be filed contemporaneously with the Notice
 of Appeal or must be filed within ten calendar days thereafter. The Appeals Board
 will consider the Affidavit of Indigency and issue an Order granting or denying
 the request for a waiver of the filing fee as soon thereafter as is
 practicable. Failure to timely pay the filing fee or file the Affidavit of
 Indigency in accordance with this section shall result in dismissal of the
 appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal,
 may request, from the Court Clerk, the audio recording of the hearing for the
 purpose of having a transcript prepared by a licensed court reporter and filing it
 with the Court Clerk within ten calendar days of the filing of the Expedited
 Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of
 the evidence within ten calendar days of the filing of the Expedited Hearing
 Notice of Appeal. The statement of the evidence must convey a complete anq
 accurate account of what transpired in the Court of Workers' Compensation
 Claims and must be approved by the workers' compensation judge before the
 record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory
 appeal, the appellant shall file such position statement with the Court Clerk within
 five business days of the expiration of the time to file a transcript or statement of
 the evidence, specifying the issues presented for review and including any
 argument in support thereof. A party opposing the appeal shall file a response, if
 any, with the Court Clerk within five business days of the filing of the appellant's
 position statement. All position statements pertaining to an appeal of an
 interlocutory order should include: (1) a statement summarizing the facts of the
 case from the evidence admitted during the expedited hearing; (2) a statement
 summarizing the disposition of the case as a result of the expedited hearing; (3) a
 statement of the issue(s) presented for review; and (4) an argument, citing
 appropriate statutes, case law, or other authority.

 13
 APPENDIX

Exhibits:

 1. Medical Records of the following providers:
 a. Wright Rehabilitation Services
 b. Prime Care Medical Center
 c. Dr. Keith Nord

 2. Dr. Robert Snyder's correspondence dated March 18, 2015
 3. Wage Statement
 4. Medical Records of Dr. Brian McCarver dated April29, 2009 and May 5, 2009

Technical record: 2
 1. Petition for Benefit Determination
 2. Dispute Certification Notice
 3. Request for Expedited Hearing
 4. Employee's Position Statement
 5. Employer's Position Statement
 6. Employer's Motion to Compel IME
 7. Employee's Response to Employer's Motion to Compel IME
 8. Second Injury Fund's Response to Employer's Motion to Compel IME

2
 The Court did not consider attachments to Technical Record filings unless admitted into evidence during the
Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as
allegations unless established by the evidence.

 14
 CERTIFICATE OF SERVICE

 I hereby certify that a true and correct copy of the Expedited Hearing Order was
sent to the following recipients by the following methods of service on this the 11th day
of March, 2016.

Name Certified Via Via Service sent to:
 Mail Fax Email
JeffBoyd, Esq., X jboyd@billboren.com;
Employee's Counsel sbland@hillboren.com

Ryan Sarr, Esq., X rsarr@morganakins.com
Employer's Counsel
Art Wells, Esq., X Art. wells@tn.gov
Second Injury Fund
Counsel

 Penny Shrum, Clerk of Court
 Court of Workers' Compensation Claims
 'WC.CourtCJerk@tn.gov

 15